# AMORY J. AND FRANCES BETTLES
*v.*
## DEPARTMENT OF REVENUE

# GORDON W. AND FLORA E. BETTLES
*v.*
## DEPARTMENT OF REVENUE

Fred J. Amundson, Moore & Amundson, P.C., Medford, represented plaintiffs.

Ted E. Barbera, Assistant Attorney General, Salem, represented defendant.

Decision for defendant rendered May 23, 1977.

CARLISLE B. ROBERTS, Judge.

Plaintiffs appeal from defendant's Orders Nos. I-76-37 (TC No. 1115) and I-76-38 (TC No. 1116), dated October 7, 1976, in which the Director of the Department of Revenue affirmed an income tax deficiency assessment against income received by plaintiffs upon termination of the Klamath Indian Management Trust in December 1974.

The necessary facts have been stipulated. Federal supervision over the Klamath Indian Tribe was ended in 1959 under the Klamath Termination of Supervision Act of August 13, 1954, PL 85-132, 68 Stat 718, 25 USC § 564 et seq. At that time, each tribal member was given the opportunity to elect to withdraw from the tribe and to receive his share of tribal property in cash or to remain with the tribe and participate in a plan for the management of the balance of the tribal property. In 1959, those tribal members who elected to withdraw were specifically exempted from federal and Oregon income taxes on the distribution received by them, as provided in 25 USC § 564j.

Plaintiffs are members of the Klamath Indian Tribe who chose in 1959 to remain in the tribe and to participate in the Klamath Indian Management Trust.

In 1969, the remaining members of the Klamath Tribe voted to terminate the trust. In order to facilitate this move, Congress enacted legislation in 1973 (PL 93-102, 25 USC § 564w-2), under which the remaining tribal property was condemned by the federal government and added to the Winema National Forest. The proceeds of the condemnation were distributed to the remaining members of the tribe (including the plaintiffs) in 1974. In 1975, Congress enacted Public Law 94-81 (25 USC § 564j note), providing that, for purposes of the Internal Revenue Code of 1954, the gain resulting from the condemnation of the Klamath Indian forest lands, which had been managed by the Klamath Indian Management Trust, would be excluded from federal gross income. Unlike the 1954 act, *supra,* no mention was made respecting Oregon's power to tax these receipts.

The question before the court is whether the 1974 distribution from the Klamath Indian Management Trust is taxable by the State of Oregon as income to the trust distributees. Resolution of this issue requires the determination of whether the 1974 distribution of the trust assets to the remaining members of the Klamath Indian Tribe was a distribution contemplated by the Klamath Termination of Supervision Act of August 13, 1954, and of the effect of Public Law 94-81 on the Oregon Personal Income Tax Act of 1969.

Plaintiffs argue, in the alternative, that the 1974 distribution of trust assets was protected from state taxation by the provisions of 25 USC § 564j (part of the original Act); or that ORS 316.012 encompassed the provisions of the second statute, Public Law 94-81, thus excluding the 1974 distribution from gross income for purposes of the Personal Income Tax Act of 1969, in which Oregon incorporated by reference substantial aspects of the federal income tax law.

The Klamath Termination of Supervision Act of

August 13, 1954, PL 85-132, 25 USC § 564 et seq., provides in pertinent part:

"§ 564d. (a) The Secretary [of the Interior] is authorized and directed to select and retain by contract, at the earliest practicable time after August 13, 1954 and after consultation with the tribe at a general meeting called for that purpose, the services of qualified management specialists who shall—

"(1) cause an appraisal to be made, within not more than twelve months after their employment, or as soon thereafter as practicable, of all tribal property showing its fair market value' by practicable logging or other appropriate economic units;

"(2) immediately after the appraisal of the tribal property and approval of the appraisal by the Secretary, give to each member whose name appears on the final roll of the tribe an opportunity to elect to withdraw from the tribe and have his interest in tribal property converted into money and paid to him, *or to remain in the tribe and participate in the tribal management plan to be prepared pursuant to paragraph (5) of this subsection;* * * *

"* * * * *

"(5) *cause a plan to be prepared in form and content satisfactory to the members who elect to remain in the tribe and to the Secretary for the management of tribal property through a trustee, corporation, or other legal entity.* If no plan that is satisfactory both to the members who elect to remain in the tribe and to the Secretary has been prepared six months before the time limit provided in section 564e (b) of this title the Secretary shall adopt a plan for managing the tribal property, subject to the provisions of section 564n of this title." (Emphasis supplied.)

"§ 564e. (a) *The Secretary is authorized* and directed to execute any conveyancing instrument that is necessary or appropriate to convey title to tribal property to be sold in accordance with the provisions of paragraph (3) of subsection (a) of section 564d of this title, and *to transfer title to all other tribal property to a trustee, corporation, or other legal entity in accordance with the plan prepared pursuant to paragraph (5) of subsection (a) of section 564d of this title.*

[ 156 ]

"(b) It is the intention of the Congress that all of the actions required by section 564d of this title and this section shall be completed at the earliest practicable time and in no event later than seven years from August 13, 1954.

"(c) Members of the tribe who receive the money value of their interests in tribal property shall thereupon cease to be members of the tribe: *Provided,* That nothing shall prevent them from sharing in the proceeds of tribal claims against the United States." (Emphasis supplied.)

"§ 564j. *No property distributed under the provisions of sections 564 to 564w-1 of this title shall at the time of distribution be subject to Federal or State income tax.* Following any distribution of property made under the provisions of said sections, such property and any income derived therefrom by the individual, corporation, or other legal entity shall be subject to the same taxes, State and Federal, as in the case of non-Indians: *Provided,* That, for the purpose of capital gains or losses the base value of the property shall be the value of the property when distributed to the individual, corporation or other legal entity." (Emphasis supplied.)

"§ 564q. (a) Upon removal of Federal restrictions on the property of the tribe and individual members thereof, the Secretary shall publish in the Federal Register a proclamation declaring that *the Federal trust relationship to the affairs of the tribe and its members has terminated.* Thereafter individual members of the tribe shall not be entitled to any of the services performed by the United States for Indians because of their status as Indians and, except as otherwise provided in sections 564 to 564w-1 of this title, all statutes of the United States which affect Indians because of their status as Indians shall no longer be applicable to the members of the tribe, and the laws of the several States shall apply to the tribe and its members in the same manner as they apply to other citizens or persons within their jurisdiction." (Emphasis supplied.)

"§ 564r. Effective on the date of the proclamation provided for in section 564q of this title, *all powers of the Secretary or other officer of the United States to take, review, or approve any action under the constitution and bylaws of the tribe are terminated.* Any powers conferred

[ 157 ]

upon the tribe by such constitution which are inconsistent with the provisions of sections 564 to 564w-1 of this title are terminated. Such termination shall not affect the power of the tribe to take any action under its constitution and bylaws that is consistent with said sections without the participation of the Secretary or other officer of the United States." (Emphasis supplied.)

Public Law 93-102, 25 USC § 564w-2(a) (1973), provides, in pertinent part:

The Secretary of Agriculture is authorized and directed to acquire by condemnation *all of the Klamath Indian forest lands which the trustee for the Klamath Indian Tribe is required to sell by the terms of its trust agreement,* and the lands so acquired shall become a part of the Winema National Forest." (Emphasis supplied.)

■■ Although plaintiffs argued to the contrary, it is clear from the language above quoted that Congress did not consider itself to have retained its historic federal trust relationship with the Klamath Indian Tribe after completion of the distribution to those members of the tribe who wished to receive the value of their interest individually and the transfer of the remaining tribal property to the Klamath Management Trust in 1959. Sections 564q and 564r of the Klamath Termination of Supervision Act of 1954 evidenced Congressional intent to terminate completely this relationship with all members of the tribe, whether they received individual compensation or participated in the trust. Under the provisions of Public Law 93-102, 25 USC § 564w-2 (1973), the Secretary of Agriculture was authorized to condemn the forest lands which had been held in trust for the remainder of the Klamath Indian Tribe, which "the trustee for the Klamath Indian Tribe [was] *required to sell by the terms of its trust agreement, * * *.*" Although plaintiffs have argued that the federal trust relationship with the members of the Klamath Indian Tribe participating in the Management Trust continued to exist beyond the 1959 distribution, this language clearly indicates Congressional understanding to the contrary. The decision to terminate the trust

was made by the remaining members of the tribe and not by Congress. Therefore, the termination of the trust and subsequent payment to those remaining members of the Klamath Indian Tribe in 1974 was not exempt from taxation because of the provisions of 25 USC § 564j as in the case of the 1959 distribution.

██ The 1975 enactment of Public Law 94-81, which retroactively excluded gain realized by the members of the Klamath Indian Tribe on the trust distribution from gross income for purposes of the Internal Revenue Code of 1954, was necessary to prevent federal taxation on the distribution, but it made no provisions for exemption of such gain from state taxation. Plaintiffs argue, however, that the provisions of ORS 316.012 must be deemed to incorporate the provisions of Public Law 94-81, exempting the gain from the 1974 distribution from state taxation. The proceeds of the Klamath Indian Management Trust were distributed in December 1974. At that time, ORS 316.012 provided:

> "Any term used in this chapter [ORS chapter 316] has the same meaning as when used in a comparable context in the laws of the United States relating to federal income taxes, unless a different meaning is clearly required or the term is specifically defined in this chapter. Any reference in this chapter to the laws of the United States or to the Internal Revenue Code means the Internal Revenue Code of 1954, and amendments thereto in effect and operative on December 31, 1971, and other laws of the United States relating to federal income taxes in effect and operative on December 31, 1971. *Any change in the laws* of the United States or in the Internal Revenue Code of 1954 relating to federal income taxes *which takes effect or becomes operative after December 31, 1971* (regardless of the date of enactment of the change by the United States Congress) *shall not apply to this chapter* except where the Legislative Assembly has specifically provided otherwise. (1973 Replacement Part.) (Emphasis supplied.)

Public Law 94-81, which excluded the condemnation proceeds from gross income for purposes of the Inter-

nal Revenue Code was enacted by Congress on August 9, 1975. ORS 316.012 was amended by the Oregon Legislative Assembly, effective September 13, 1975, *applicable to tax years beginning on and after January 1, 1975,* resuming the prior practice of adoption of federal income tax changes affecting federal "taxable income." *See* Or Laws 1975, ch 672, § 3. This amendment had no retroactive effect.

■ As was stated by the U. S. Supreme Court in *United States v. Consolidated Edison Co.,* 366 US 380, 384, 81 S Ct 1326, 1329, 6 L Ed2d 356, 360 (1961):

> "It is settled that each 'taxable year' must be treated as a separate unit, and all items of gross income and deduction must be reflected in terms of their posture at the close of such year. [Citations omitted.] * * *"

In addition,

> "* * * [D]etermination of the amount of gross income and of allowable deductions for any given year must depend upon the tax statutes in effect during that year. * * *" (*Reo Motors v. Commissioner,* 338 US 442, 447-448, 70 S Ct 283, 286, 94 L Ed 245, 249-250 (1949).)

Thus, plaintiffs' income for the year in question must be determined with respect to the tax statutes in effect in Oregon during 1974.

■ For the tax year in question, ORS 316.012 had "frozen" the Internal Revenue Code as of December 31, 1971, as it applied to ORS chapter 316. This freeze included "[a]ny change in the laws of the United States * * * relating to federal income taxes * * *." The provisions of Public Law 94-81 related to federal income taxes, as they identified an exclusion from gross income, and thus were subject to the "freeze" then in effect in Oregon. The exclusion of income to distributees from the Klamath Indian Management Trust from "gross income" for federal tax purposes did not affect the taxability of that income for the purposes of Oregon state income tax.

The result sought by the plaintiffs can be achieved only through a retroactive statutory amendment. (It

appears that SB 772 was filed with the 59th Oregon Legislative Assembly for that specific purpose.)

The 1974 distribution to plaintiffs was properly taxable by the State of Oregon. Defendant's Orders Nos. I-76-37 and I-76-38 are affirmed.

No costs are allowed.