*[441]
 
 CARLISLE B. ROBERTS, Judge.
 

 Plaintiffs have appealed to this court from the defendant’s Order No. VL 80-159, dated April 23, 1980. Plaintiffs are contract purchasers of a parcel of property located in Sections 26, 27, 34 and 35, T14 S, R 9 W, WM, Benton County, Oregon, with a total area of approximately 70 acres.
 
 [1]
 

 The complaint alleges that the plaintiffs made a timely application to the county assessor for special assessment as farm use property pursuant to ORS 308.370 for the tax year 1979-1980. The application was denied by the assessor and, after hearing, by the defendant. The complaint alleges that the property had been platted by the plaintiffs’ seller, pursuant to ORS chapter 92, but it had never been developed and all of the platted property was sold as one parcel to the plaintiffs, who pin-chased it in 1976 for the purpose of developing a farm. The complaint also alleges that the property is zoned Planned Development (Art. XIV, Benton County Zoning Ordinance) and is surrounded by a Forestry Conservation District (Art. Ill, Benton County Zoning Ordinance), and that the Benton County Planning Department interprets the Forestry Conservation District zone as applicable to this property and that agricultural use is a conditional use in the FC zone.
 

 Following the filing of the complaint, counsel for the plaintiffs and the defendant entered into a stipulation "that the decree may be entered in this suit based on the following facts:
 

 "1. That Plaintiff’s [sic] property, the subject of this suit, is about 70 acres in size;
 

 "2. That it is zoned as recreational property;
 

 "3. That it was platted after September 9, 1971;
 

 "4. That 45-plus acres are in timber production;
 

 "5. That there is a homesite on the property;
 

 "6. That the remaining acreage is in use as farmland
 
 *[442]
 
 or is being developed to farm use in perennial crops of fruit or nut trees; and such use has existed for two years prior to the assessment year.
 

 "7. That the income in 1978 did not exceed $1,999; "8. That the income limitations of ORS 308.372 should be waived for pre-mature [sic] perennial crops if the property otherwise qualifies under ORS 215.203.
 

 "9.
 
 That the land would be eligible for farm use classification even though platted after September 9, 1971 since the actual use is
 
 farming;
 

 "10. That the Department of Revenue Opinion and Order VL-80-159 is in error in relying solely on the platting under chapter 192 ORS [ORS ch 92], if the property qualifies otherwise under ORS 215.203.
 

 "11.
 
 That plaintiff’s
 
 [sic]
 
 complaint be dismissed based upon these stipulated findings with costs to neither
 
 [sic]
 
 party. ”
 
 (Emphasis supplied.)
 

 Because of the conclusion of law set out in paragraph 9 and the prayer or motion contained in paragraph 11, the court asked for and received briefs in support and explanation of the stipulation quoted above. They refer to the provisions for "unzoned farmland” found in ORS 308.370(2) et seq. A person seeking such classification for his farm property must make an application to the county assessor upon a form prepared by the Department of Revenue and supplied by the county assessor, giving the information called for by ORS 308.375. There is no specific statement in ORS 308.375 requiring the application form to make inquiry as to whether the proposed farm use land has or has not been platted. The only published requirement specifying this as essential is found in ORS 308.390, which states:
 

 "(1) Upon approval of an application [filed pursuant to ORS 308.375], the county assessor shall assess land approved under ORS 308.375 at the special assessment provided in subsection (2) of ORS 308.370 and shall also enter on the assessment and the tax roll the notation 'potential additional tax liability’
 
 until the land becomes disqualified for such assessment
 
 by:
 

 "(a) Notification by the taxpayer to the assessor to remove such special assessment;
 

 
 *[443]
 
 "(b) Sale or transfer to an ownership making it exempt from ad valorem property taxation;
 

 "(c) Removal of the special assessment by the assessor upon the discovery that the land is no longer in farm use; or
 

 "(d)
 
 Platting the land after September 9, 1971, under the provisions of ORS chapter 927
 
 (Emphasis supplied.)
 
 [2]
 

 ORS 308.390 is curiously worded vis-a-vis ORS 308.375. The latter statute provides for the filing of the application for special assessment by the owner of farmland. It requires the use of a form prepared by the Department of Revenue; the minutiae of the form are not made explicit (in particular, there is no statutory statement as to the effect of platting). There is no question relating to platting on the face of the form (entitled "Application for Special Assessment of Un-zoned Farmland”).
 
 [3]
 
 The statutory language suggests that an application for special assessment is made by the owner without reference to the nonplatting requirement and that ORS 308.390, with its reference to platting, looks to some future time, when "the land becomes disqualified for such assessment.” A reader can be led to believe that ORS 308.390(l)(d) refers only to (a) a platting of the land by the applicant-owner subsequent to the approval of the special farm use by the assessor and, (b) only after September 9, 1971. This is consistent with counsel’s argument: Apparently taking note of ancient plattings throughout Oregon which have never been developed or utilized in any way, but are still on record, counsel urge that there is no rational basis for nullification of the special farm use assessment by reason of platting,
 
 *[444]
 
 under the facts of this suit. The assumption of bad faith (implicit in the statute) on the part of the owners, on the ground that the existing platting proves their paramount interest to be property development rather than farm use, does not square with the facts. A conclusion that tax avoidance is present is not tenable.
 

 There is some logic in counsel’s reasoning and there is some latent ambiguity in the statutory drafting which must be given consideration.
 
 [4]
 

 What is the legislative intent with respect to ORS 308.370(2) providing for the special assessment of unzoned farmland? Undoubtedly, it was to aid in the preservation of farmland by giving the benefits of ORS 308.370(1) to the bona fide farmer in those counties which were slow to adopt farm use zoning under ORS 308.370(1). Numerous qualifying provisions and restrictions, in furtherance of this goal, have typified the farm use statutes since their inception. Or Laws 1963, ch 577. Although always providing an escape clause for the investor in land, the emphasis on conservation of farmland and the protection of the bona fide farmer have been paramount, as indicated in amendments strengthening the original act made by the
 
 *[445]
 
 Legislative Assembly in 1971, 1973, 1975, 1977 and 1979.
 

 It is obvious that subdivision of land, usually followed by the building of improvements, is antipathetic to farming requirements. However, the first legislative amendment (following the original 1963 act) which referred to platting in relation to farmland is found in Or Laws 1971, ch 629, § 3, adding ORS 308.390(l)(d), set out above. Thus, there is an inference that the amendment is legislative recognition of some abuse of the statute. The language is not retroactive; it speaks from the date of the 1971 legislative act but it has no other limitations. It has been continued unchanged when subsequent amendments were added to ORS 308.390 by Or Laws 1973, ch 303, § 3, and Or Laws 1979, ch 480, § 3. No cases have construed it.
 

 Casting about for guides to legislative intent, the court notes that the legislature has followed a similar policy in the special taxation of forest land (which, like the farm use measure, creates special tax advantages). The Western Oregon Forest Land and Severance Tax Act, ORS 321.358, relating to applications for designations as forest land, also requires that an application be made to the county assessor and takes note of the platting factor:
 

 "(2) The application shall be made upon forms prepared by the Department of Revenue and supplied by the county assessor, and shall include the following:
 

 ‡
 

 "(g) Whether the land has been subdivided or a plat has been filed under ORS 92.100.
 

 «if:
 
 ^
 
 sfc s}i
 

 "(3) Land is
 
 not
 
 being held or used for the predominant propose of growing and harvesting trees of marketable species * * *
 
 if it is subject to a plat filed under ORS 92.100
 
 * * *.
 
 Otherwise, the determination
 
 [by the county assessor]
 
 shall be made with due regard to all relevant evidence and without any one or more items of evidence necessarily being determinative.
 
 (Emphasis supplied.)
 

 The intent of the legislature here appears to be to give
 
 *[446]
 
 to the county assessor an area of discretion in weighing the effect of the requirements of
 
 ORS
 
 321.358(2), but eliminates his discretion if he finds that the property which is the subject of application for the special forest designation is found to be platted, no matter what the date of or utilization of the platting.
 

 The provisions of the Western Oregon Small [Forest] Tract optional tax (relating to the special assessment and taxation of certain forest land within the provisions of ORS 321.705 to 321.765) contain ORS 321.730(1), which provides that application by the claimant shall be made on appropriate forms supplied by the State Forester, and shall include the following:
 

 "(d) Whether the land has been subdivided or a plat has been filed under ORS 92.120.”
 

 In addition, two further subsections of ORS 321.730 are pertinent to the present discussion:
 

 "(2) The State Forester, in determining whether the application submitted under subsection (1) of this section should be approved, shall weigh the relevant evidence submitted on the application form required by subsection (1) of this section.
 

 "(3) If the State Forester determines that an applicant’s land is eligible for classification under ORS 321.705 to 321.765, he shall so certify to the county assessor or assessors of the county or counties in which the land that is the subject of the classification is located. A copy of such certification shall be sent to the applicant.”
 

 In this instance, it appears that the legislature has given the administrative officer, the State Forester, full discretion to determine whether the subdividing or platting of the property should be deemed significant to the use of the land for forest cultivation.
 

 As above stated, there is logic in the contentions of counsel; i.e., the provision for subdivision of property or the platting thereof may be significant in revealing the underlying intentions of a particular property holder. If the platting has long been abandoned as a useful tool with respect to specific property and if the
 
 *[447]
 
 applicant’s bona fide efforts to farm the property for a profit are apparent, it appears logical that the discretion given to the administrator in ORS 321.730(2) and (3) offers a proper power and an acceptable policy. However, the provisions of ORS 308.390 (the farm use statute) and ORS 321.358 (the timber severance tax) are in conflict therewith. The confusion is further evidenced by examination of the "special assessment of forest land” provided by ORS 321.805 to 321.825 (applicable to forest land east of the summit of the Cascade Mountains which is not assessed as farmland). In ORS 321.815 of the statute, the pertinent part describing the application required of an owner of land who desires designation of his property as forest land reads as follows:
 

 "(2) The application shall be made upon forms prepared by the Department of Revenue and supplied by the county assessor, and shall include the following:
 

 * * *
 

 "(g) Whether the land has been subdivided or a plat has been filed under ORS 92.120.
 

 «sfc * * %
 

 "(3)
 
 It shall be conclusively presumed that land is not being held or used for the predominant purpose of growing and harvesting trees of marketable species*
 
 *
 
 *ifit is subject to a plat filed under ORS 92.120.
 
 Otherwise, the determination shall be made with due regard to all relevant evidence and without any one or more items of evidence necessarily being determinative.” (Emphasis supplied.)
 

 This last example further testifies to the very great importance which the Oregon legislature seemingly attributes to the fact of platting in an application for farm use or for forest use where special tax concessions are involved.
 
 [5]
 

 
 *[448]
 
 In this state of the law, it is the court’s conclusion that its best policy is to adopt an adage attributed to Abraham Lincoln: "The best way to get rid of a bad law is to enforce it.” The legislative policy respecting the weight to be given to platting in the partial tax exemption statutes set out above is equivocal and cannot be resolved in the present suit.
 

 The usual rules of construction of statutory provisions support the defendant’s Order No. VL 80-159, on which this court’s jurisdiction rests.
 

 To begin with, this is a statute relating to a partial tax exemption and such statutes are subject to a "strict but reasonable construction.”
 
 Eman. Luth. Char. Bd. v. Dept. of Rev., 4
 
 OTR 410, 416 (1971),
 
 aff'd
 
 263 Or 287, 502 P2d 251 (1972).
 
 Oregon Physicians’ Serv. v. State Tax Com.,
 
 220 Or 487, 493, 349 P2d 831 (1960). It is a long-established rule of statutory construction that words of common use are to be given their natural, plain and obvious meaning.
 
 Blalock v. City of Portland et al,
 
 206 Or 74, 291 P2d 218 (1956);
 
 Benevolent Society v. Kelly,
 
 28 Or 173, 42 P 3 (1895). A court has no legislative powers and is not authorized to supply deficiencies in a statute.
 
 Foster v. Goss et al,
 
 180 Or 405, 175 P2d 794 (1947). The court is not authorized to rewrite a statute or ignore the plain meaning of unambiguous words, and the legislative purpose and intent to enact a valid and constitutional law must be assumed.
 
 Fullerton v. Lamm,
 
 177 Or 655, 163 P2d 941; rehearing denied 177 Or 655, 165 P2d 63 (1946). While there is ambiguity here, arising from changes of tense in related statutory sections, the meaning is plain.
 

 In effect, counsel are urging the court to rewrite ORS 308.390(l)(d), but without sufficient authority or explicit instructions. (Perhaps the desired effect could be achieved by: "Platting
 
 of
 
 the land after September 9, 1971,
 
 by the applicant,
 
 under the provisions of ORS chapter 92.”) However, courts may not, under pretext of construing a statute, supply an essential element
 
 *[449]
 
 omitted by mistake or design by the legislature. ORS 174.010;
 
 Salahub v. Montgomery Ward & Co.,
 
 41 Or App 775, 599 P2d 1210 (1979).
 

 Sympathy must be felt for the plaintiffs. However, relief should be sought from the legislature.
 
 Schmitt v. Commission,
 
 1 OTR 25 (1963). The policy of the legislature in this instance is too ambiguous and widely spread to be touched by the court.
 
 [6]
 

 Defendant’s Order No. VL 80-159 is affirmed and this suit is dismissed, with prejudice. No costs to either party.
 

 [1]
 

 Neither the defendant’s opinion and order nor plaintiffs’ complaint sets out a legal description of the property or the county assessor’s account number.
 

 [2]
 

 ORS 308.390(l)(d) was added to the ORS section by Or Laws 1971, ch 629, § 3, as follows: "(6) Platting the land after the effective date of this 1971 Act [later determined to be September 9,1971] under the provisions of ORS chapter 92.”
 

 [3]
 

 However, on the taxpayer’s copy of the form, at the bottom, a statement is printed: "See other side for additional information.” On the reverse side, in addition to general information, is a reprint of most of the Oregon law relating to the special assessment of unzoned farmland, including the full quotation of ORS 308.390(l)(d), the statement for disqualification by reason of platting, quoted in the text of this opinion.
 

 [4]
 

 Counsel have cited four cases in support of their theory of the case.
 
 Parr v. Dept. of Revenue,
 
 276 Or 113, 553 P2d 1051 (1976), stands for the proposition that, in construing ambiguous statutes, the court strives to determine legislative intent; that tax statutes should not be construed in favor of the taxpayer or the state; and that the construction placed on a statute over many years by administrators of the particular act is entitled to great weight.
 
 Willamette Univ. v. Tax Com.,
 
 245 Or 342, 422 P2d 260 (1966), also states that the general principle that statutes providing exemption from taxation are to be strictly construed is secondary to the rule that the intention of the Legislative Assembly must be the primary objective sought. (This case should be read with the decision in
 
 Eman. Luth. Char. Bd. v. Dept. of Rev.,
 
 263 Or 287, 502 P2d 251 (1972).)
 
 Ritch v. Department of Revenue,
 
 261 Or 78, 493 P2d 38 (1972), is cited for the holding that
 
 use,
 
 not
 
 ownership,
 
 of the land determines its eligibility for farm use classification.
 

 These authorities are useful but not determinative in reaching a conclusion in the present case. However,
 
 Rogers et al v. Dept. of Rev.,
 
 6 OTR 139 (1975), cited by counsel, is clearly distinguishable from the present case on both facts and the law, and is used by the court herein to illustrate the difficulty in ascertaining both the basic legislative policy and the weight to be accorded the factor of platting.
 

 [5]
 

 In the view of the court, the legislature has defeated its purpose in ORS 321.815(3) by establishing the policy as a conclusive presumption.
 
 See Rogers et at v. Dept. of Rev.,
 
 6 OTR 139, 147-150 (1975). Consider
 
 Bass v. General Development Corp.
 
 (Fla), 374 So2d 479 (1979) (holding unconstitutional a conclusive presumption in respect to platting of farmland). However, the provision which is presented to the court in this suit, ORS 308.390(1)(d), is not vitiated by the language of "conclusive presumption.”
 

 [6]
 

 Experience has shown that the Oregon Legislature is quick to respond with corrective legislation in cases such as this one.
 
 (See
 
 the case of
 
 Bettles v. Dept. of Rev.,
 
 7 OTR 153 (1977); the alleged statutory defect was quickly cured by legislative action. Other examples could be cited.)
 

 Note should also be taken by plaintiffs of the legislative provision for the vacation of undeveloped subdivisions, found in ORS 92.205—92.245.