IN THE OREGON TAX COURT
MAGISTRATE DIVISION
Property Tax

| | | |
|---|---|---|
| CORNELL RD. LLC, CHRISTIANA LLC, ALEXANDER LLC, | ) ) ) | |
| Plaintiffs, | ) ) | TC-MD 250463N |
| v. | ) ) | |
| WASHINGTON COUNTY ASSESSOR, | ) ) | |
| Defendant. | ) | **DECISION** |

Plaintiffs appealed Defendant's disqualification of 36.38 acres of property identified as Account R603065 (subject property) from farm use special assessment for the 2025-26 tax year. (Compl at 1, 3.) The parties filed cross-motions for summary judgment, supported by stipulated facts and exhibits, and submitted supplemental stipulated facts after oral argument. An oral argument was held by remote means on March 18, 2026. Matthew Martin, an Oregon attorney, appeared on behalf of Plaintiffs. Jason Bush, Deputy County Counsel, appeared on behalf of Defendant. This matter is now ready for decision.

## I.  STATEMENT OF FACTS

The facts in this case are undisputed. The subject property was brought into the urban growth boundary (UGB) sometime between 1979 and 1981. (Second Stip Facts at ¶ 1.) In 1982, the owner – a predecessor in interest to the current owners – applied for and received farm use special assessment. (*Id.* at ¶ 2-3, Ex A.) In 2006, Plaintiffs acquired a 50 percent undivided interest in the subject property as follows: Cornell Rd LLC (an undivided 23.8710 percent interest); Christiana LLC (an undivided 13.0645 percent interest); and Alexander LLC (an undivided 13.0645 percent interest). (Stip Facts at ¶ 3.[1]) Plaintiffs have not sold or transferred

---

[1] The remaining 50 percent interest in the subject property was conveyed to 15005 Cornell LLC in 2006.

their interests in the subject property since that time and have continued using the subject property for farming activities.[2] (*See* Ptfs' Mot for Summ J at 7.) Plaintiffs are tenants in common under a 2006 tenancy in common agreement that was terminated on March 7, 2025 (TIC Agreement). (Stip Facts at ¶ 2, 4.)

The 50 percent interest in the subject property not owned by Plaintiffs was conveyed for consideration in 2024 by two statutory warranty deeds: 15005 NW Cornell LLC conveyed its 25 percent interest to Cornell Road Investments LLC on May 3, 2024; and Tasha Teherani-Ami, as Trustee of the Sonja Dinihanian GST Trust, conveyed her 25 percent interest to Cornell Land LLC on September 12, 2024. (Stip Facts at ¶ 8, 10.) Cornell Land LLC agreed to be bound by the TIC Agreement. (*Id*., Ex A at 1.) On April 17, 2025, Defendant notified the five co-tenant owners of the subject property that the property no longer qualified for special assessment because of a "[s]ale in an area zoned for urban services (ORS 197.756)[.]" (*Id.* at ¶ 14; Compl Ex 1.) This appeal followed.

## II. ANALYSIS

The issue before the court is whether a conveyance of a 25 percent undivided interest[3] in the subject property constituted a "sale of a lot or parcel" requiring disqualification of the subject

---

and was later acquired by 15005 NW Cornell LLC and Tasha Teherani-Ami, as Trustee of the Sonja Dinihanian GST Trust, each a 25 percent interest. (Stip Facts at 3, 5; Ex A at 2.) The parties were unable to determine the exact timing of those later transfers, or any intervening transfers. (*See* Cover Letter to Second Stip Facts, Apr 17, 2026.)

[2] In 2018, 15005 Cornell LLC brought a partition action in Washington County Circuit Court seeking a referee to arrange for the partition of the subject property by public or private sale pursuant to ORS 105.205. (Stip Facts at ¶ 6.) On November 17, 2024, the judge in the partition action ordered the referee to solicit offers for the subject property as a whole, finding the owners would suffer great prejudice through loss of value if the property were partitioned. (*Id*. at ¶ 12, Ex E at 2-3.) As of the date of oral argument in this case, the sale had not yet occurred.

[3] Although there were two conveyances here, each of a 25 percent interest, under Defendant's argument either would trigger disqualification, so the court focuses on a single conveyance.

property from special assessment under ORS 197.756.[4] The court will grant summary judgment when there are no genuine issues of material fact, and the moving party is entitled to judgment as a matter of law. Tax Court Rule-Magistrate Division (TCR-MD) 13 B, applying Tax Court Rule (TCR) 47 C.

The parties disagree about whether the conveyance here triggered disqualification under ORS 197.756. Plaintiffs argue that a sale "requires the complete alienation by one ownership entity of the bundle of rights that inure to owners of real property in favor of another ownership entity." (Ptfs' Mot for Summ J at 3.) In Plaintiffs' view, the relevant "ownership entity" here is all the tenants in common. (*See id.*) They claim "[a] 'sale' does not occur upon the conveyance of an undivided interest in a property because there is continuity of ownership." (*Id.*) Based on their reading of the statute's plain text, Plaintiffs argue no "sale of a lot or parcel" occurred, as only some of the undivided interests were conveyed while Plaintiffs retained their ownership. (Ptfs' Resp at 2.)

Defendant counters that "the transfer of a property interest for consideration constitutes a sale of the Subject Property." (Def's Mot for Summ J at 3.) That includes the transfer of even one (or two) of the interests, as occurred here. (*See id.*) Plaintiffs respond that Defendant's proposed interpretation of the statute requires the court to insert words it does not contain, namely, "the sale of *an interest in* a lot or parcel." (*See* Ptfs' Resp at 2 (emphasis added).)

A.      *Principles of Statutory Construction*

The issue presented is what constitutes a "sale of a lot or parcel" under ORS 197.756.

---

[4] The court's references to the Oregon Revised Statutes (ORS) are to 2023. This statute was renumbered ORS 197A.208 in 2025. It states in pertinent part: "Upon the sale of a lot or parcel located inside an urban growth boundary that is assessed at its value for farm use under ORS 308A.050 to 308A.128, the lot or parcel shall be disqualified for farm use assessment * * *." The statute contains additional requirements and exceptions, but those are not at issue here. (Ptfs' Mot for Summ J at 2 n 3.)

When interpreting a statute, the court's "paramount goal" is to discern the legislature's intent. *State v. Gaines*, 346 Or 160, 171, 206 P3d 1042 (2009); *see also PGE v. Bureau of Labor and Industries*, 317 Or 606, 610, 859 P2d 1143 (1993) (citations omitted). The court begins with the text and context as "the best evidence of the legislature's intent." *PGE*, 371 Or at 610; *see also Gaines*, 346 Or at 171 ("[o]nly the text of a statute receives the consideration and approval of a majority of the members of the legislature, as required to have the effect of law"). In construing the text, words of common usage are "given their plain, natural, and ordinary meaning." *PGE*, 317 Or at 611. Context "includes other provisions of the same statute" as well as "prior versions of the statute, applicable case law interpreting the statute, and other related statutes." *Id.*; *North Harbour Corp. v. Dept. of Rev.*, 16 OTR 91, 96 (2002). "[A]fter examining text and context," the court may consider the legislative history of the statute to the extent helpful. *Gaines*, 346 Or at 171-172; *see also* ORS 174.020(1)(b). Finally, "the court may resort to general maxims of statutory construction to aid in resolving the remaining uncertainty." *Gaines*, 346 Or at 172.

B.     *Statutory Construction of ORS 197.756 – Text and Context*

The court begins by examining the text and context of ORS 197.756, which states:

"(1) Upon the sale of a lot or parcel located inside an urban growth boundary that is assessed at its value for farm use under ORS 308A.050 to 308A.128, the lot or parcel shall be disqualified for farm use assessment if:

   "(a) The lot or parcel is in an area identified for urban services under ORS 197A.207; and

   "(b) The urban services are available by ordinance for urbanization.

"(2) Disqualification under subsection (1) of this section shall not apply to the sale of a lot or parcel to the owner's spouse, parent, stepparent, grandparent, sister, brother, daughter, son, stepchild or grandchild, or sale to a lessee of the owner if the lessee is conducting farm use as defined in ORS 215.203 on the lot or parcel at the time of sale."

It is undisputed that the subject property is in an area identified for urban services and that such services are available, and Plaintiffs do not allege that any of the exceptions in subsection (2) apply. The dispute narrowly revolves around whether a "sale" took place.

1.      *Definition of "sale"*

Sale is not defined in ORS 197.756 or in chapter 197. However, the use of sale in this statute appears to be within the ordinary meaning of the term. *State v. Eastep*, 361 Or 746, 751, 399 P3d 979 (2017) ("When statutes do not define their terms, we assume that the legislature intended them to have their plain, ordinary meanings"). *Webster's Dictionary* defines sale as:

> "the act of selling : a contract transferring the absolute or general ownership of property from one person or corporate body to another for a price (as a sum of money or any other consideration); *specifically* : a present transfer of such ownership of and title to all of or a part interest in personal property (as existing identifiable movable and tangible or fungible goods) under a contract by the seller to the buyer for a price paid or payable in money or other personal property — distinguished from *gift*[.]"

*Webster's Third New Int'l Dictionary* 2003 (unabridged ed 2002) (emphasis in original). *Black's Law Dictionary* defines "sale" as "[t]he transfer of property or title for a price." *Black's Law Dictionary* 1337 (7th ed 1999). Both definitions describe a transfer of ownership of property for a price, as occurred here with the subject property.

Plaintiffs argue that the term "the" preceding "sale of a lot or parcel" in the statute indicates that the legislature intended sale to mean the complete alienation of "absolute title" to the subject property and not "a partial alienation of rights *associated* with [it]." (Ptfs' Mot for Summ J at 5 (emphasis in original).) Use of the definite article "the" rather than the indefinite article "a" may indicate an intent to refer to something specific or previously mentioned. *In Re Marriage of Carroll and Murphy*, 186 Or App 59, 68, 61 P3d 964 (2003); *see also Osborn v. PSRB*, 325 Or 135, 142, 934 P2d 391 (1997) (paragraphs of a statute must be read sequentially to

understand the meaning of various modifiers). Here, the word "the" appears in the first sentence of the statute and does not refer to a previous sentence or section. All else being equal, use of the word "the" suggests a narrower reading of "sale of a lot or parcel."

The meaning of "sale" in ORS 197.756 is ambiguous based solely on the text. Dictionary definitions of "sale" reveal that the plain meaning includes both a transfer of absolute ownership and transfer of part of the ownership interests. That tends to support Defendant's view that the transfer of a 25 percent undivided interest for consideration qualifies as a sale.

2.    *Related statutes*

Relevant context here includes provisions in chapter ORS 308A concerning farm use special assessment, especially non-EFU special assessment, which are expressly referenced in ORS 197.756.[5] The relevant provisions of ORS chapter 308A predate the adoption of ORS 197.756 in 1999, and so ORS 197.756 must be read in concert with that existing law. *Coates v. Marion County*, 96 Or 334, 339, 189 P 903 (1920) (statutes are "construed as part of a general and uniform system of jurisprudence, and their meaning and effect is to be determined in connection * * * with other statutes on the same subject").

In 1999 and now, ORS 308A.077(1) allows "any owner" of non-EFU farmland to apply for special assessment. An "owner" includes "[a]ny one of tenants in common * * *." ORS 308A.077(2)(B); ORS 308A.071(7)(c). The assessor is required to disqualify non-EFU farmland from special assessment upon: notice by the taxpayer to assessor; sale or transfer of the property making it exempt; lack of farm use or income; and the act of recording a subdivision plat.[6] But the assessor may *not* disqualify land upon "sale or transfer to a new owner * * * if the land

---

[5] ORS 197.157 references property qualified for special assessment under ORS 308A.050 to 308A.128.

[6] Land disqualified because a subdivision plat was recorded may be requalified for special assessment after all additional tax, interest, and penalty are paid, and a new application is submitted. ORS 308A.116(4).

continues to be used solely for farm use." ORS 308A.116(2). Presumably, the subject property would continue to qualify for special assessment under ORS 308A.116(2), but for the application of ORS 197.756.

The court draws two conclusions from the preexisting statutory scheme for non-EFU special assessment. First, in the context of non-EFU farm use special assessment, the legislature recognized ownership interests of less than "absolute title," allowing any owner – including any tenant in common – to apply for special assessment. That weighs against Plaintiffs' view that a "sale" requires "the complete alienation by one ownership entity" of all rights in the property. Second, ORS 197.756(1) appears to operate as an exception to ORS 308A.116(2) by requiring disqualification upon sale of property located inside the UGB. It adds a narrower exception for sales to certain family members or a lessee who is conducting the farm activity at the time of sale. ORS 197.756(2). Read in context with ORS chapter 308A, ORS 197.756 appears to require disqualification upon the sale of an interest in property.

Plaintiffs urge the court to consider the definition of "sale" under ORS 92.305, which provides the definitions for the Oregon Subdivision and Series Partition Control Law. (Ptfs' Mot for Summ J at 5.) ORS 92.305(9) states:

> "'Sale' or 'lease' includes every disposition or transfer of land in a subdivision or a series partition, or an interest[7] or estate therein, by a subdivider or series partitioner or a developer, or their agents, including the offering of such property as a prize or gift when a monetary charge or consideration for whatever purpose is required by the subdivider, series partitioner or developer or their agents."

Plaintiffs argue that the statute demonstrates that the legislature knows how to broadly define a sale of land as including "an interest" therein when it so chooses. (Ptfs' Mot for Summ J at 6.) Plaintiffs reason that the lack of such specificity in ORS 197.756 was purposeful, indicating a

---

[7] An "interest" includes an undivided interest in a lot or parcel. *See* ORS 92.305(4)(a).

narrower definition of "sale." (*Id.*)  ORS 92.305 also demonstrates that the legislature distinguishes between "a lot or parcel" and an "undivided interest in" that lot or parcel. (*Id.*)

The connection between ORS 197.756 and the Oregon Subdivision and Series Partition Control Law is not entirely clear.  The stated purpose of that law is consumer protection from fraud, deceit, and misrepresentation in real estate transactions.  ORS 92.313, 92.317.  The relevant sale is "by a subdivider or series partitioner or a developer[.]"  ORS 92.305(9).  The specific contours of what constitutes a sale are important because the chapter goes on to specify the applicable provisions that must be complied with before land can be sold.  *See* ORS 92.325 (namely, *all* the applicable provisions of ORS 92.305 to 92.495, with noted exceptions).  In contrast, ORS 197.756 appears to be directed to the county assessor with a purpose of describing when property in the UGB must be disqualified from farm use special assessment.  It contains no explicit connection to ORS 92.305 definitions.[8]

In sum, the statutory context provided by ORS chapter 308A indicates that the relevant owner for non-EFU farm use special assessment includes any one of the tenants in common, as opposed to an owner who possesses "absolute title."  Furthermore, ORS 197.756 operates as an exception to the general rule that a sale does *not* result in disqualification so long as the property remains in farm use.  Although ORS 92.305(9) offers an example of a more expansive definition of sale, the statute is not clearly related to ORS 197.756 and serves a different purpose.  Based on the statutory context, the conveyance of a 25 percent undivided interest constituted a sale. The court next examines the legislative history.

---

[8] Defendant directs the court to ORS 696.800(14), defining a "sale" as "a transaction for the transfer of real property from the seller to the buyer" that includes: (a) exchanges of real property and (b) land sales contracts. (*See* Def's Mot for Summ J at 4.)  This definition relates to agents' obligations in real estate transactions, and the court likewise does not find it helpful here.

C.      *Legislative History, Canons of Construction, Conclusion of Statutory Construction*

ORS 197.756 was enacted in 1999 as part of Senate Bill 586, a bill relating to farmland within a UGB. *See* 1999 Or Laws ch 503 (SB 586). The House Committee on General Government held a hearing on May 11, 1999, during which testimony was taken regarding the purpose of the bill. *See* Tape 84, A.7. Jon Chandler (Chandler), Director of Governmental Affairs for the Oregon Building Industry Association, testified about the "four things" the bill did. Regarding farmland in the UGB, he stated that it 1) allowed land on the boundary to be removed from the UGB under limited circumstances, 2) allowed conversion to urban use within a specific time period without the recapture of taxes, 3) provided a way for farmland to be removed from the buildable lands inventory by being designated as open space, and 4) "place[d] some limitation on the ability to transfer farmland inside the boundary and still receive farm use assessment." *Id*.[9] Regarding the fourth item, Chandler explained:

> "If it goes to a family member, which is defined farmer to farmer, as long as it keeps in family farming it can continue the farm use assessment. If it goes to an insurance company or a developer or some other holding company, essentially that isn't directly related and isn't engaged in agriculture, then the farm use assessment will be lost."

*Id*. In response to a question, Chandler confirmed that a sale to a non-family member would lead to the loss of the assessment, even if the new owner continued the farm use.

Overall, SB 586 appears directed toward encouraging development of land within a UGB that is zoned for urban services, providing only limited exceptions for land to remain in farm use special assessment.[10] Consistent with that purpose, once land is sold to a new owner,

---

[9] The functions of the bill were codified in ORS 197.186 and ORS 197.754, in addition to ORS 197.756. *See also* Department of Revenue 2022 Farm Use Manual at 4-6 to 4-7 (Disqualification of land zoned for urban uses), and 5-1 to 5-2 (Additional tax upon disqualification).

[10] That is in contrast with property zoned for farm use, which qualifies for special assessment if it is used exclusively for farm use. ORS 308A.062(1).

likely but not necessarily for purposes of urban development, the special assessment will cease.

As Chandler explained, disqualification occurs *even if* the new owner continued the farm use. A

limited exception applies for sales to a family member or a lessee who is already farming.

Like exemption statutes, special assessment statutes are subject to "strict but reasonable

construction." *See Sokol Blosser Winery v. Dept. of Rev.*, 8 OTR 196, 199 (1979); *Kalishman v.*

*Dept. of Rev.*, 8 OTR 440, 448 (1980). That is because "[t]axation is the rule and exemption

from taxation is the exception." *Oregon Methodist Homes, Inc. v. Horn*, 226 Or 298, 307, 360

P2d 293 (1961). Considering the legislative intent to encourage development of land within the

UGB and the strict construction of special assessment statutes in favor of taxation, the legislature

likely intended "sale" in ORS 197.756 to be read broadly, including sales of undivided interests.

D.      *Application of ORS 197.756 to Subject Property*

Based on the foregoing, the sale of a 25 percent undivided interest in the subject property

was a "sale of a lot or parcel" triggering disqualification under ORS 197.756. Plaintiffs argue

against that result, contending that ORS 197.756 "requires the transfer of the entire estate to a

different entity without any continuity of ownership." (Ptfs' Mot for Summ J at 7.) This did not

occur here, because Plaintiffs retained their collective 50 percent ownership as tenants in

common with the new owners. Plaintiffs highlight the endurance of farm use on the property

because of this continuity of ownership. Specifically, they state,

> "[b]ecause there has been continuity of ownership (i.e., Plaintiffs), there has been
> continuity of farming activities on the Subject Property. The new tenants in
> common have no right to stop Plaintiffs from farming the property because they
> hold, as all the tenants in common do, an undivided interest in the Subject
> Property."

(*Id.*) However, ORS 197.756 concerns disqualification from farm use assessment upon a sale.

The focus is not on use; indeed, cessation of farm use would not trigger disqualification *under*

*this statute*, as it does not require that farm use continue, even under a qualified purchase by a family member or tenant. Should the subject property cease to be farmed, it could be removed from special assessment under ORS 308A.116, requiring disqualification upon discovery by the assessor that the land is no longer in farm use.

As stated, the subject property is owned by tenants in common. "[T]enants in common hold their interest in realty independent of each other." *Le Vee v. Le Vee*, 93 Or 370, 382, 183 P 773 (1919). Absent an express agreement or evidence to the contrary, "it is presumed that co-owners enjoy equal rights to use and control the property, independently of the other owner's knowledge or consent." *Sheppard v. Weekly*, 72 Or App 86, 92, 695 P2d 53 (1985) (this case involved the co-ownership of a vehicle and has been cited for the presumption stated above in cases involving real property; *see, e.g.*, *Church v. Woods*, 190 Or App 112, 118, 77 P3d 1150 (2003)). The level of accord Plaintiffs impute to continuity of ownership is more akin to a joint venture, which does not exist here.[11] Cotenants cannot "do an act respecting the title which will bind the others." *Le Vee*, 93 Or at 382. They can, however, sell their independently-held property interests—interests in the entire property—as occurred here.

Under Plaintiffs' proposed definition of a sale, requiring transfer of the entire estate to a different entity with no continuity of ownership, owners of undivided interests in a property could incrementally sell their interests to new tenants in common while maintaining continuity of ownership if at least one "current" owner remained after each sale. Put in practice, Plaintiffs could sell *their* ownership interests—ultimately resulting in a "transfer of the entire estate"—without triggering disqualification, so long as the most recent buyer retain its interest. And so

---

[11] Plaintiffs do not claim a joint venture and the TIC Agreement, although terminated in 2025, specifically states there shall be no joint venture among the owners of the subject property. (*See* Stip Facts at ¶ 4; Ex A at 2.)

the cycle could continue, disqualification evaded until all tenants in common sell all interests in the subject property to a new owner in a single transaction. Such a result is beyond what the legislature intended when it required disqualification upon sale under ORS 197.756.

### III.  CONCLUSION

Upon careful consideration, the court concludes that the conveyance of a 25 percent undivided interest in the subject property constituted a "sale of a lot or parcel" under ORS 197.756, and the subject property was properly disqualified from special assessment. Now, therefore,

IT IS THE DECISION OF THIS COURT that Defendant's cross-motion for summary judgment is granted, and Plaintiffs' cross-motion is denied. Plaintiffs' appeal is denied.

_____

*To appeal this Decision, file a complaint in the Regular Division of the Oregon Tax Court. Appeals are accepted by electronic filing; by mail at 1163 State Street, Salem, OR 97301-2563; and by hand delivery to 1241 State Street, Salem, OR, Floor 4R.*

*Your complaint must be submitted within __60__ days after the date of this Decision or this Decision cannot be changed.  TCR-MD 19 B.*

*This Decision was signed by Presiding Magistrate Allison R. Boomer and entered on June 26, 2026.*