CARLISLE B. ROBERTS, Judge.
 

 Plaintiff appealed to the Oregon Tax Court from the Department of Revenue’s Order No. VL 78-520, dated January 16, 1979, which affirmed the action of
 
 *[197]
 
 the Yamhill County Assessor and denied special farm use assessment on a portion of plaintiffs property for the tax year 1977-1978.
 

 The subject property is approximately two acres of rocky area, unfit for growing grapes, situated in the middle of a vineyard which is specially assessed as farmland. The total property consists of approximately 75 acres with a winery located on the subject property. The assessor removed these two acres from farmland classification for the tax year 1977-1978.
 

 The parties stipulated as fact that plaintiff primarily grows six varieties of grapes which have virtually no market other than for wine making and that the entire yield from the vineyard is processed into wine by plaintiffs winery. At the winery, fresh grapes are stored, crushed, stemmed, fermented, aged and bottled. For most wines, the process from harvesting to bottling takes approximately five to seven months. For some wines, the aging process in barrels may take one to two years.
 

 Plaintiff contends that all functions performed on the subject property fall within the statutory definition of "farm use” as found in ORS 215.203(2)(a), which includes "the preparation and storage of the products raised on such land for man’s use and animal use and disposal by marketing or otherwise. * * *” Plaintiff maintains wine is produced from fresh grapes, a farm product, after being stored, processed and bottled on plaintiffs property and, therefore, wine is merely another form of the grapes, that is, a "prepared” farm product.
 

 Refer v. State Tax Commission,
 
 256 Or 294, 473 P2d 129 (1970)
 
 (aff'g
 
 3 OTR 477 (1969)), is cited by plaintiff as precedent for an interpretation of "farm use” under ORS 215.203(2). In that decision, the Supreme Court affirmed the judgment of the Oregon Tax Court that the land upon which were placed "buildings used for storage, packaging and processing” of plaintiffs fruit qualified for "farm use.”
 

 
 *[198]
 
 Plaintiff in the instant case submits that its function of crushing, stemming, fermenting, aging and packaging (bottling) grapes is directly analogous to the "storage, packaging and processing” operation found to qualify for farm use assessment in
 
 Reter, supra.
 

 In addition, plaintiff distinguishes the David and Diana Lett appeal to the Department of Revenue, resulting in Order No. VL 76-815, dated January 14, 1977, wherein denial of a special farm use assessment for a winery in Yamhill County was affirmed. The winery at issue in Lett was located approximately nine miles from the vineyards in an industrial section, while plaintiff’s winery is located near the middle of the vineyard. Therefore, plaintiff urges that the subject property be reclassified fpr assessment at farm use rates.
 

 Defendant contends that the processing of fresh grapes into bottled wine is more akin to manufacturing than to a normal part of an agricultural operation, and that, to carry out the legislature’s intent, the special farm use assessment should not be opened up to processing operations which change the grower’s product into a different commodity. Even though the grapes in the instant case are grown only for wine making, defendant asserts that the situation is no different from that of hops which will eventually be brewed into beer or wool which will be woven into cloth. Plaintiffs argument that grapes will ferment on the vine, naturally (because of the yeast in the skins), does not answer the defendant’s conversion argument, since it was admitted that the vintner’s art involves the use of additional yeasts and it is well known that oenology is an intricate science.
 

 The issue in this case is whether the subject property is exclusively used for farm use in order to qualify for the special farm use assessment under ORS 308.370. "Farm use” is defined in ORS 215.203(2)(a) as
 
 *[199]
 
 "the current employment of land including that portion of such lands under buildings supporting accepted farming practices for the purpose of obtaining a profit in money * * *."
 

 "Accepted farming practice” is defined in ORS 215.203(2)(c) as "a mode of operation that is common to farms of similar nature, necessary for the operation of such farms to obtain a profit in money, and customarily utilized in conjunction with farm use.”
 

 That tax exemption statutes should be strictly construed in favor of the state and against the taxpayer is a canon universally recognized. Oregon has adhered to this policy since at least 1895.
 
 Hibernian Benevolent Society v. Kelly,
 
 29 Or 173, 196, 42 P 3, 6 (1895).
 

 This rule of strict construction has a corollary and a second rule, that of a "reasonable” construction in order to carry out the legislative intent. The Oregon Supreme Court early adopted the "strict but reasonable rule” in
 
 Corbett Inves't Co. v. State Tax Com.,
 
 181 Or 244, 250, 181 P2d 130, 132 (1947), when the court quoted with approval a statement of Mr. Justice Cardozo,
 

 " 'Exemptions from taxation are not to be enlarged by implication if doubts are nicely balanced. [Citation omitted.] On the other hand, they are not to be read so grudgingly as to thwart the pmpose of the lawmakers.’ ”
 

 The legislative purpose of Oregon lawmakers in establishing a special assessment for land in exclusive farm use, as stated in Or Laws 1973, ch 503, § 1 (codified as ORS 215.243) and ORS 308.345 to 308.360, was to encourage the preservation of land for agricultural uses by providing a special farm use assessment for real property exclusively used for farm purposes.
 
 (<See
 
 4 Willamette LJ 431 (Fall 1967) and 9 Willamette LJ 1 (March 1973).) While adhering to the rule of strict construction when interpreting tax exemption statutes, this court attempts to follow the Supreme Court’s rule of reason and common sense. As plaintiff points out, this court allowed a farm use assessment for land
 
 *[200]
 
 used for storage of farm products and the decision was affirmed by the Oregon Supreme Court in
 
 Reter, supra. Reter
 
 is distinguished from the instant case, however, in that the fresh fruit would have deteriorated if unprotected and the fruit remained in storage as fresh fruit until it was sold.
 
 *
 
 In the instant case, the grapes are also prepared and stored on the subject property, but here the grapes are later converted to wine. It can be argued that the fresh fruit in
 
 Retervtas
 
 also converted to other products such as pies and preserves, but there is a critical difference in the present case. Here the grapes are converted to wine
 
 on the subject property.
 
 Reason tells us that grapes are raised on the subject property, not wine.
 

 The legislative intent regarding the farm use exception is interpreted as protecting natural products, not new products via processing. Lacking a straightforward statement by the legislative act, farm use should not be extended to include processing plants which convert harvested agricultural crops into new products. Therefore, the Department of Revenue’s Order No. VL 78-520 is affirmed. Defendant is awarded its statutory costs.
 

 *
 

 The Supreme Court "adopted” the opinion in
 
 Reter v. Commission,
 
 3 OTR 477 (1969), which stated, at 480: "The fruit is hauled in, treated, sorted and packaged for sale. The fruit remains in storage as fresh fruit until it is sold. * * *”