## IN THE OREGON TAX COURT

BELOZER FARMS, INC.,
dba Lynden Farms
*v.*
DEPARTMENT OF REVENUE
(TC 2339)

John C. Caldwell, Hibbard, Caldwell, Bowerman, Schultz & Hergert, P.C., Oregon City, represented plaintiff.

Dave L. Canary, Assistant Attorney General, Department of Justice, Salem, represented defendant.

Decision for defendant rendered January 3, 1986.

### CARL N. BYERS, Judge.

Plaintiff appeals from an opinion and order denying property tax exemption for certain of plaintiff's property. Plaintiff and its parent corporation are, for the most part, the result of a family chicken business started in the 1940's by the father of the current principal shareholders. The family business has grown from an egg hatching business only to a comprehensive chicken production industry. In 1979, the Western Farmers Association, doing business as Lynden Farms, owned and operated the chicken processing plant in question, as well as other business properties. In that year, that business went bankrupt. Plaintiff viewed processing as critical to its business future and purchased the processing plant from Western Farmers Association.

The stipulated facts reveal that plaintiff is a complete

integrated chicken operation. Eggs are produced on breeder farms, hatched in modern hatcheries, raised to broiler size on grow-out farms and processed for the market in the subject processing plant. While the details of the operation up to the point the chicken enters the subject property is interesting education, it is not relevant here. The operation of the subject property is relevant.

Summarizing the facts stipulated by the parties, the grown chickens are delivered from the grow-out farms to the subject property at night. The chickens are processed the following day at the rate of 70 birds per minute, 38,000 birds per day along a mass production line. The birds are hung upside down on a kill line where they are stunned, killed and bled. Machines then remove the feathers, heads and feet from the birds. The birds are then eviscerated, inspected, giblets and necks saved and then chilled and graded. Grade A birds are sold as whole birds; lesser grades are further processed by cutting and packaging the meat for sale. For anyone who has ever chopped a chicken by hand, the mechanical details and speed are most impressive.

Plaintiff seeks to have the machinery and equipment used in the processing plant held exempt under ORS 307.400. The relevant portion of that statute provides:

"(2)   All inventory shall be exempt from ad valorem taxation.

"(3)   As used in subsection (2) of this section, 'inventory' means the following tangible personal property:

"(a)   Farm machinery and equipment used primarily in the preparation of land, planting, raising, cultivating, irrigating, harvesting or placing in storage of farm crops; or

"(b)   Farm machinery and equipment used primarily for the purpose of feeding, breeding, management and sale of, or the produce of, livestock, poultry, fur-bearing animals or bees or for dairying and the sale of dairy products; or

"(c)   Farm machinery and equipment used primarily in any other agricultural or horticultural use or animal husbandry or any combination thereof; or

"* * * * *"

Plaintiff contends that the processing plant is part of

its integrated poultry operation and qualifies under the statute. Defendant, in opposition, contends that processing is not part of the "farm" and that the machinery and equipment in the subject plant is not "farm equipment."

To discern the intent of the legislature, a quick review of the history of the statute is helpful. This is particularly true where evolution has resulted in a feathery creature hardly recognizable from examining the original exemption.

Prior to 1965, personal property which constituted the inventory of businesses was subject to ad valorem taxation on a parity with all other taxable property. In that year the legislature enacted provisions to reduce the taxes on inventory over a period of time, eventually to reach 50 percent. That statute defined "inventory" as:

> "[A]ll livestock[1] and all items of tangible personal property described as materials, supplies, containers, goods in process, finished goods and other personal property owned by or in possession of the taxpayer, that are or will become part of the stock in trade of the taxpayer held for sale in the ordinary course of his business." 1965 Or Laws ch 604, § 1.

Originally codified in ORS chapter 310.605 *et seq,* the statute was amended in 1969 (without changing the definition of inventory) and recodified as ORS 310.608.

In 1973, the legislature amended the definition of inventory by adding at the beginning: "farm machinery used in the planting, cultivating or harvesting of farm crops." 1973 Or Laws ch 670, § 1. In 1977, the legislature again amended the definitional parts of the statute, separating the definition concerning farm machinery and equipment from "property held for sale in the ordinary course of business."[2]

---

[1] As noted by the court in *Eastern Oregon Farming Co. et al. v. Dept. of Rev.,* 7 OTR 74 (1977), the term "livestock" includes animals which are "inventory" in the traditional sense and animals which are generally regarded as capital assets (*i.e.,* breeding herds).

[2] ORS 310.608(3):

"As used in subsection (1) of this section, inventory means the following tangible personal property:

"(a) Farm machinery and equipment used in the planting, raising, cultivating or harvesting of farm crops or used for the purpose of feeding, breeding, management and sale of or the produce of, livestock, poultry, fur-bearing animals or bees or for dairying and the sale of dairy products or any other agricultural or

In 1979 the statute was again amended, deleting the schedule of increasing exempt percentage and adopting a complete exemption approach. Because the statute was changed to a complete exemption, in 1981 it was renumbered as ORS 307.400 and amended to its current form. As noted by this court in *Eastern Oregon Farming Co. et al. v. Dept. of Rev.*, 7 OTR 74 (1977), it is clear the legislature has not adhered to the traditional concepts of "inventory." Consequently, the legislative intent must be sought in the context of the terms of the statute other than "inventory."

■      The issue before the court is whether the subject machinery and equipment is "farm" machinery and equipment.

The statute does not define "farm." In *Oregon Oyster Co. v. Dept. of Rev.*, 7 OTR 308, 312 (1978), this court expressed the opinion that the legislature's intention was to refer "to the traditional concept of a 'farm' and the equipment used to produce a crop on such a farm." The court held that an oyster growing operation is not a farm within the meaning of the statute in question. As noted in that case, exemption statutes are subject to the "strict but reasonable construction" policy. In this case it would seem that, even under a broad definition of the word "farm," plaintiff's operation would not qualify since no product is grown or raised on the premises. *See West Foods, Inc. v. Morgan, Orr*, 16 Or App 613, 616, 519 P2d 1062 (1974).

The real question is where in the food chain does the farm end and some other process begin? In *Reter v. Commission*, 3 OTR 477 (1969), *aff'd* 256 Or 294, 473 P2d 129 (1970), in construing ORS 215.203 (a zoning statute for farm use zones) the court held that "farm use" includes land used for storage and processing of products. On the other hand, in *Sokol Blosser Winery v. Dept. of Rev.*, 8 OTR 196 (1979), the

horticultural use or animal husbandry or any combination thereof;

"(b)  Center pivots, wheel lines, movable set lines; and

"(c)  Items of tangible personal property described as materials, supplies, containers, goods in process, finished goods and other personal property owned by or in possession of the taxpayer, that are or will become part of the stock in trade of the taxpayer held for sale in the ordinary course of his business." 1977 Or Laws ch 819, § 1.

court held that land used for a winery was not farm use. In that case the court reasoned that the legislative intent was to protect natural products, *i.e.,* grapes, and not new products realized as a result of processing, *i.e.,* wine.

In examining ORS 307.400, the legislature appears to have consciously stopped short of processing. In subsection (a) of ORS 307.400(3), the statute describes the process of growing plants by specifying field preparation, planting, cultivating, irrigating, harvesting and storage. It is significant that the statute does not also say "processing" or some similar term. Likewise, subsection (b) deals with the feeding, breeding, management and sale of animals. Again, no processing, butchering or other terms are used. Thus the statute seems to contemplate the growing and selling of plants and animals and their products, but not processed crops and animals. Plaintiff's operation is a processing plant. Like a vegetable cannery, a wheat mill or a dried fruit factory, it takes a farm product and processes it for consumption. If plaintiff's position were to prevail, it would appear that the personal property of all of these facilities would be exempt under ORS 307.400.

In *Bain v. Dept. of Rev.,* 293 Or 163, 646 P2d 12 (1982), the Oregon Supreme Court held that a salmon hatchery operated by Oregon Aqua Foods was sufficiently "akin to a manufacturing facility" to fit within the tax exemption provided by ORS 307.330(1) (and thereby avoid the more limited exemption of the "nonmanufacturing" category). In that case, the court cited *Purdue Foods, Inc. v. State Department of Assessment and Taxation,* 264 Md 672, 288 A2d 170 (1972), which held that a chicken processing plant like plaintiff's is manufacturing within the meaning of the state tax statute allowing an exemption for materials and machinery used in manufacturing.

Plaintiff contends that the plain meaning of the terms "sale of" and "produce of" includes processing broiler chickens into meat ready for consumption. The court does not agree. In the context used, machinery and equipment used for the "sale of" chickens might include pens, scales to weigh the chickens, vehicles to transport them and equipment to unload them. "Sale of" does not mean "processing," "butchering" or "converting." Likewise, the term "produce of" refers to

chicken eggs, not the chickens themselves. Machinery used to process eggs, separating yolks from whites, dehydrating and packaging the results for use in bakeries would not qualify as "farm" machinery under ORS 307.400. It is the court's opinion that the legislature intended to exempt only that personal property required to produce the farm product, not to process it.

This court therefore concludes that the machinery and equipment used in plaintiff's chicken processing plant is not "farm machinery and equipment" entitled to exemption under ORS 307.400. This would be true even though the processing plant was located on one of plaintiff's grow-out farms. The location of the machinery and equipment is not important. The use of the machinery and equipment is. Accordingly, defendant's Opinion and Order No. 4-1626-26 is hereby affirmed. Defendant shall recover costs.