## IN THE OREGON TAX COURT

### ANADROMOUS, INC.
*v.*
### DEPARTMENT OF REVENUE
(TC 2831)

George B. Heilig, Corvallis, represented plaintiff.

Ted E. Barbera, Senior Assistant Attorney General, Department of Justice, Salem, represented defendant.

Decision for plaintiff rendered September 7, 1989.

**CARL N. BYERS, Judge.**

Plaintiff appeals from defendant's Opinion and Order Nos. 88-1093, 88-1094 and 88-1095 denying plaintiff

property tax exemption for the tax year 1988-89. The case has been submitted to the court on stipulated facts[1] and memoranda of law.

The issue in this case is whether plaintiff's tangible personal property used in its operations qualifies for exemption as "farm machinery and equipment" under ORS 307.400.

Plaintiff, as its name suggests, engages in the business of cultivating, raising and harvesting salmon.[2] It also conducts activities involving the sale of embryonic eggs, smolt, and disease research. Plaintiff conducts its salmon raising business in two ways: salmon ranching and salmon farming.

Salmon ranching consists of "marking" young salmon and releasing them into the ocean with the expectation that a portion will return for harvesting. In 1987, plaintiff released 500,000 Coho salmon and 5,300,000 spring Chinook.

Salmon farming is a domestic process. The young salmon are maintained in saltwater pens until harvested. In 1988, 500,000 pounds of pan-size Chinook and Atlantic salmon were produced by farming.

The salmon cycle begins with egg production. Male and female brood stock salmon are kept in a "photo period" building at the company's hatchery. Day lengths are altered to accelerate the maturity of the fish. At maturity the spawning population is screened for disease. Only eggs and sperm from healthy fish are used for spawning. The eggs are taken from the female and then fertilized with milt from the males. The fertilized eggs are cleaned and trayed for incubation. The hatching process takes about six weeks. The resulting fingerling salmon are known as "fry."

The fry are reared in large ponds at the hatchery until they are large enough to move to salt water. Plaintiff carefully regulates water quality, flow, oxygen, temperature, density

---

[1] The facts as recited by the court are, for the most part, taken verbatim from the parties' Statement Of Stipulated Facts.

[2] Anadromous refers to those species of fish which ascend rivers from the sea for breeding during certain seasons. Webster's Third New International Dictionary 76 (1961).

and diet. The culture techniques and controlled water conditions permit growth of healthy smolts with optimum opportunity for survival after release into the ocean.

Coho salmon weighing four to twelve pounds return September through November in the first year following release. Fall Chinook salmon also begin returning the first year after release, with some returning each fall through the fourth year. Spring Chinook return in the period May through September each year for four years after release. Chinook salmon may weigh from four to fifty pounds depending on the length of time they have been at sea.

Adults returning from the ocean climb the "fish ladder," a series of twelve inch waterfalls, swim over a finger-weir trap, and enter a long deep channel. Except for brood stock, all returning adults are immediately removed from the channel, processed and sold.

Brood stock are selected from the biggest and brightest returning adults. They are transported live to the hatchery's fresh water ponds. There they are held for one to six months until mature and a new cycle begins.

Plaintiff operates its business at four different sites: The fish hatchery on Fort Creek in Klamath County, a 32.5-acre site at the north spit of Coos Bay, a 15-acre site at Jordan Point in Coos Bay and a pathology lab located in Lane County. The pathology lab provides disease control and research and development which continue with respect to the ranching and farming operations of the company.

■    All tangible personal property in Oregon is subject to property tax unless "otherwise provided by law." ORS 307.030. ORS 307.400 provides as follows:

"(1)    Livestock, poultry, fur-bearing animals and bees are exempt from ad valorem taxation.

"(2)    All inventory shall be exempt from ad valorem taxation.

"(3)    As used in subsection (2) of this section, 'inventory' means the following tangible personal property:

"(a)    Farm machinery and equipment used primarily in the preparation of land, planting, raising, cultivating, irrigating, harvesting or placing in storage of farm crops; or

"(b)   Farm machinery and equipment used primarily for the purpose of feeding, breeding, management and sale of, or the produce of, livestock, poultry, fur-bearing animals or bees or for dairying and the sale of dairy products; or

"(c)   *Farm machinery and equipment used primarily in any other agricultural or horticultural use or animal husbandry or any combination thereof*[.]"[3] (Emphasis added.)

---

[3] The remainder of the statute, dealing with more specific types of equipment, is as follows:

"(d)   Items of tangible personal property, including but not limited to, tools, machinery and equipment, owned by or in the possession or under the control of the taxpayer that are used by the taxpayer predominantly in the construction, reconstruction, maintenance, repair, support or operation of that farm machinery, equipment and other real and personal farm improvements, that are:

"(A)   Owned by or in the possession or under the control of the taxpayer; and

"(B)   Are used primarily in the animal husbandry, agricultural or horticultural activities, or combination of animal husbandry, agricultural or horticultural activities, carried on by the taxpayer; or

"(e)   Center pivots, wheel lines, movable set lines; or

"(f)   Items of tangible personal property described as materials, supplies, containers, goods in process, finished goods and other personal property owned by or in possession of the taxpayer, that are or will become part of the stock in trade of the taxpayer held for sale in the ordinary course of business.

"(4)   As used in this section:

"(a)   'Center pivot' means a piece of self-propelled machinery that rotates around a riser for the purpose of sprinkling a circular tract of land. 'Center pivot' includes all of the component parts of the center pivot irrigation system that are ordinarily located above the ground on the land to be irrigated and that can be disconnected from the riser and moved to another point. A center pivot constitutes personal property.

"(b)   'Center pivot irrigation system' means an irrigation system that uses pumping stations and pipelines to convey water from its source to a riser to which a center pivot may be connected and used for sprinkling.

"(c)   'Riser' means a pipe located in the field to be irrigated that rises vertically up through the surface of the ground.

"(5)   The following are exempt from ad valorem taxation:

"(a)   Frost control systems used in agricultural or horticultural activities carried on by the farmer.

"(b)   Trellises used for hops, beans or fruit or for other agricultural or horticultural purposes.

"(c)   Hop harvesting equipment, including but not limited to, hop pickers.

"(d)   Oyster racks, trays, stakes and other in-water structures used to raise bi-valve mollusks.

"(6)   There shall be exempt from ad valorem taxation the radio communications equipment, meteorological equipment and other personal property used in connection with the operation of the field burning smoke management program established under ORS 468.455 to 468.490.

"(7)   Any beverage container having a refund value as required under ORS 459.810 to 459.890 is exempt from ad valorem taxation."

Plaintiff claims that its personal property qualifies as "farm machinery and equipment." Defendant believes the opposite and relies upon two cases. The first is *Oregon Oyster Co. v. Dept. of Rev.,* 7 OTR 308 (1978). In that case, the court construed ORS 310.608,[4] the predecessor to ORS 307.400, to determine the meaning of "farm." After considering the traditional concepts of "farm" as land devoted to agriculture, the court found that oyster farming did not qualify. It stated:

> "Plaintiff's operation is a form of aquaculture, not agriculture. The oyster are a product of the water, from which they derive their nutrients, rather than the soil. * * * The court does not feel compelled to deviate from the traditional meaning of the word 'farm' simply because modern technology adds a new meaning to the term to describe its advances." *Id.,* at 313.

In reaching this conclusion, the court rejected dictionary definitions of farms or farming and Oregon statutes pertaining to oyster production which used farming terminology.

The second case on which defendant relies is *Bain v. Dept. of Rev.,* 293 Or 163, 646 P2d 12 (1982). In that case, the Oregon Supreme Court found that a salmon hatchery was entitled to tax exemption as a manufacturing facility under ORS 307.330. In doing so, the court rejected the argument that a fish hatchery is more akin to an agricultural activity. It looked to the dictionary definition of agriculture and found that it emphasized production from land. The court then stated:

> "Given the state of the art, or science, of agriculture in 1961, it is doubtful that the legislature which amended ORS 307.330 to include the 'nonmanufacturing' language would have considered Aqua-Foods' activities to be agriculture, or any other nonmanufacturing use." *Id.,* at 172.

■    If these cases rested upon an unchanging statutory foundation, there would be no need for further inquiry. But, the statutes are not unchanging. This court briefly reviewed the busy history of what is now ORS 307.400 in *Belozer Farms v. Dept. of Rev.,* 10 OTR 194 (1986). The most recent change, made in 1987, was to overcome *Oregon Oyster Co. v. Dept. of Rev., supra,* by specifically making "[o]yster racks, trays,

---

[4] The 1981 Legislature changed ORS 310.608 from a partial to a complete exemption and renumbered the statute to its present 307.400.

stakes and other in-water structures used to raise bi-valve mollusks" exempt. Or Laws 1987, ch 691, § 2.

■ In 1985, the legislature amended ORS 215.203(2)(a) to include within the definition of farm use the following:

" 'Farm use' also includes the propagation, cultivation, maintenance and harvesting of aquatic species."

■ Although this definition is in a land use (zoning) chapter, the definition is adopted by reference by the special farm use assessment statutes. ORS 308.345 and ORS 308.370. Thus, plaintiff's land used for its salmon farming and ranching would qualify for special assessment as "farm use."

Statutes in pari materia must be construed together.

"Whenever possible, statutes which relate to the same subject and rest upon the same or similar policies should be construed so as to be 'uniform in their application and in the results which they accomplish.' " *Clarkston v. Bridge,* 273 Or 68, 78-79, 539 P2d 1094 (1975), quoting in part from *Daly v. Horsefly Irrigation District,* 143 Or 441, 445, 21 P2d 787 (1933).

■ The court recognizes that the zoning statutes and property tax exemption statutes are not the same subject matter. Land use laws rest upon different policies than tax exemption. Where the policies are different, the statutes are not to be construed together. *Gen. Elec. Credit Corp. v. Tax Com.,* 231 Or 570, 373 P2d 974 (1962). However, the farm use assessment statutes do provide for a partial exemption from taxation for farm land. *Masters v. Dept. of Rev.,* 5 OTR 134 (1972). These statutes and ORS 307.400 are in pari materia. Even if they are not in a strict sense in pari materia, the court views them sufficiently close as to construe them together. The purpose of such construction is to produce a "general state of harmony" within the property tax laws dealing with farming. 2A Sutherland Stat Const § 53.01 (4th ed. 1984). This is the kind of coordination found in *Dept. of Rev. v. Martin,* 3 Or App 594, 474 P2d 355 (1970), where the court construed the adoption laws and Oregon inheritance tax laws in pari materia.

It appears that the legislature has responded to modern technology and changed the traditional concept of farming to include aquaculture. Accordingly, it is reasonable to conclude that the legislature intended the meaning of "farm

machinery and equipment" to be consistent with "farm use." The adoption of the oyster "exemption" in ORS 307.400(5)(d) is not inconsistent with this view.

Defendant argues that the oyster exemption amendment would have been unnecessary if the legislature had intended "aquaculture" in ORS 215.203 to be applied to ORS 307.400. Defendant, however, assumes that the legislative process and the administration of tax laws are perfectly consistent. Such is not the case. The legislative history of the oyster exemption is a good example. Senator Brenneman, sponsor of the SB 808, 1987 Legislative Session, bill, stated in his submitted testimony to the Senate Revenue and School Finance Committee that the amendment was viewed as a clarification of existing law. His testimony states:

> "In the 1985 session, Senate Bill 185 included in the definition of farm uses, the propagation, cultivation, maintenance and harvesting of aquatic species. Senate Bill 185 also provided for assessment of land used in aquaculture at farm use value. Unfortunately, Senate Bill 185 did not speak directly to the issues of taxation of inventories; thus the necessity for this legislation." *Hearings on SB 808 Before Senate Revenue & School Finance Committee,* 1987 Legislative Session (Statement of Senator John Brenneman, Ex 1).

The court believes that when the legislature amended the definition of farm use in ORS 215.203, it intended to include aquaculture within the meaning of "farm" for purposes of the property tax statutes. Admittedly, it is difficult to apply a general concept such as "farm."

> "The question of what properly constitutes a bona fide farm is difficult to determine and it is equally difficult under the statutes to establish any guidelines or standards." *Hartsock v. Commission,* 3 OTR 434, 436 (1969).

*See also,* for example, *Sokol Blosser Winery v. Dept. of Rev.,* 8 OTR 196 (1979). Nevertheless, the legislature has defined the term and made that definition applicable to special farm assessment statutes. It is unlikely that it intended a different definition for other tax exemption statutes.

■    This conclusion produces harmonious results with related statutes. Under ORS 308.380, defendant is empowered to provide for regulations to define "farm use" for administration of the farm use statutes. It would be incongruous for

defendant to provide a definition of farm use (which must include aquatic species) for partial tax exemption of land that does not also apply to exemption of personal property. The purpose of Senate Bill 185, which was proposed by defendant, was to get the definition of farm use more firmly into the tax statutes. *See Hearings on SB 185 Before House Committee on Revenue & School Finance,* 1985 Legislative Session (June 17, 1985). By construing farm equipment to include equipment used in aquaculture, the exemption statutes will be in harmony with each other. This appears consistent with other provisions as well. For example, ORS 307.325 lists several specific items which are exempt in the hands of the farmer, one of which is "fish." Part of the exemption is for fish "in the actual or constructive possession of the farmer who produced them." This language suggests that the legislature considered fish a farm product.

Based on the above, the court finds that plaintiff's tangible personal property used in its fish farming and ranching operations qualifies for exemption under ORS 307.400 for the 1988-89 tax year. Judgment will be entered consistent with this opinion.

Costs to plaintiff.