DECISION
Plaintiff appeals the omitted property assessment for personal property identified as Account P2168887 for the 2004-05 through 2009-10 tax years. A trial was held in the Tax Courtroom in Salem, Oregon on May 16, 2011. Lynn R. Stafford, Attorney at Law, Oregonians in Action Legal Center, appeared on behalf of Plaintiff. Michael Cropp (Cropp), owner of Plaintiff, testified on behalf of Plaintiff. Brad Anderson, Senior Assistant County Counsel, appeared on behalf of Defendant. Vickie Ellinwood (Ellinwood), Personal Property Appraiser, and Corey Henkelman (Henkelman), Senior Commercial Property Appraiser testified on behalf of Defendant. Plaintiffs Exhibits 1 through 9 and 11 were admitted without objection. Defendant's Exhibits A through J were admitted without objection.
The Account at issue contains numerous items of personal property. Mediation was held in Salem, Oregon on March 8, 2011, with Presiding Magistrate Tanner during which the parties agreed that specific items of personal property are "taxable" and others are "non taxable." (Ptf's Ex 1; Def's Ex A.) The parties agreed that the following items of personal property are taxable: train shed (on real property), railroad track (on real property), rail tie spikes (on real property), camera/printer, popcorn machine, latte machine, boat/float, miscellaneous supplies, Halloween décor, Loch Ness monster, shark, retail shelving, ticket booth (8 x 10 foot building on *Page 2 
real property), [1] cash boxes, and lake electronics. (Id.) The parties agreed that the following items are non taxable: computer 2001, computer 2003, sewing machine, safe, radios, fax, copy machine, security system, and beach boat. (Id.) The parties were not able to reach an agreement with respect to five items of personal property: wheelbarrows, three sternwheelers (boats), two trains and train cars (trains), and traffic safety equipment. (Id.)
 I. STATEMENT OF FACTS
Cropp testified that he has been a farmer since 1964 and started Plaintiffs farm (farm) about 21 years ago. The farm now includes approximately 1,600 acres on which grass seed, clovers, and pumpkins are grown. It also includes an 8 to 12 acre corn maze. Cropp testified that the pumpkin patch began in 1991. It is rotated to a different location each year and is approximately 16 to 18 acres in size.
The pumpkin patch and related activities are only open to the public six weeks out of the year. Cropp testified that, during the month of October, up to 50,000 people visit the farm, including 8,000 to 10,000 people during the busiest weekend in October. (See Def s Ex B at 2.) Cropp described the process of pumpkin picking available to the public: Visitors park in an 18-acre grass field and then proceed to the ticket booth, where they can purchase tickets to the pumpkin patch and also to the corn maze. Visitors who choose to pick a pumpkin from the patch pay $4 per person to take either the train or boat out to the pumpkin patch where they can pick a pumpkin and haul it back to either the train or boat in a wheelbarrow provided by Plaintiff[2] (See Def s Ex B at 5.) Cropp testified that visitors can ride a train or boat whether or not they purchase a pumpkin for the same price of four dollars per person. *Page 3 
Pumpkins picked from the patch must still be paid for at the store. The price of a pumpkin is based on its weight. Pumpkins picked from the patch cost the same as pumpkins purchased from the store; however, visitors receive a $1.00 discount on their pumpkins when they purchase a ticket to ride the train or boat out to the pumpkin patch. (See Def's Ex B at 5.) Other items are offered for sale at the farm store, including gourds, plants, and crafts.
Cropp testified that all of the wheelbarrows are used exclusively for transporting pumpkins. Ellinwood compared the wheelbarrows to grocery carts or wagons used by commercial nurseries, both of which are taxable personal property. Ellinwood testified that she views a crop as becoming a "product" once it is removed from the plant. During cross examination, Ellinwood further testified that she would consider saws provided by a Christmas tree farm to be taxable personal property if used by customers.
Cropp testified that the trains and boats are used during a few other events at the farm, such as picnics and weddings. The picnics last about five hours; the trains and boats are used for about three or three and one-half hours during picnics. Picnics cost $5 per person to attend and there is no extra fee to ride the train or boat. Cropp testified that the farm hosted two weddings and five picnics in the past year.
Cropp testified that he built both the trains and the boats. Cropp testified that he built the newer of the trains for $40,000; it is valued at $28,000 but is probably worth less than $20,000. Cropp estimated the value of the boats to be around $3,000, noting that the second oldest needs to be rebuilt. He testified that he has built other farm attractions, including a "caterpillar" type ride made out of detergent drums fastened together, mechanical sharks, and a Loch Ness monster. Cropp testified that he previously agreed that the sharks and the Loch Ness monster are taxable, but regretted that decision. He testified that the "traffic safety equipment" includes three *Page 4 
orange vests donated by a customer, flags made by his wife, and a half dozen traffic cones that were originally found throughout the fields.
Plaintiff provided several exhibits concerning "agri-tourism" and Oregon's policy of supporting "agri-tourism." Plaintiff provided an excerpt from the "Agri-Tourism Workbook" that is "[d]istributed by The Agri-Business Council of Oregon[.]" (Ptf's Ex 3 at 1.) The Agri-Tourism Workbook defines "agri-tourism" as "a commercial enterprise at a working farm or woodland, ranch, or agricultural plant conducted for the enjoyment of visitors that generates supplemental income for the owner. Certain off-the-farm direct sales of products and experiences may also be considered agri-tourism." (Id. at 2; internal quotations omitted.) Plaintiff also provided a letter from Nick Andrews, Metro-Area Small Farm Extension: Horticulture, stating: "The Oregon Department of Agriculture (ODA) defines agri-tourism on their website. `Oregon agri-tourism is defined as a commercial enterprise at a working farm, woodland, ranch, or agricultural plant designed for the enjoyment of visitors.' * * * The website goes on to explain that `Entertainment farming and agri-tourism are important tools used by farmers to increase the profitability of their farms.'" (Ptf's Ex 7.) That letter further states: "Lakeview Farms is a working farm. The [C]ropp family pumpkin patch is an agri-tourism activity that I believe is consistent with their commercial farm and ODA's definition of agri-tourism." (Id.)
Ellinwood testified concerning the distinction between farm use and retail or commercial use of property. She views the farm as a retail or commercial operation, characterizing it as a "mini-Disneyland," featuring train and boat rides that serve as entertainment. In support of Defendant's position that the farm is a commercial operation, Ellinwood noted the availability of *Page 5 
the farm for weddings, picnics, and other events. (See Def's Ex B at 3.) The farm is also a destination for school field trips. (Def's Ex 3 at 7.)
Henkelman testified that he visited the farm on October 12, 2010, at around 1:00 p.m.; it was a week day. Defendant provided notes and photographs from Henkelman's site visit. (Def's Exs F and G.) Henkelman testified that he views Plaintiff's operation as "agri-entertainment," essentially a retail operation. He considered the fact that the farm is used for weddings, picnics, and other events supportive of the conclusion that it is a retail operation. He testified that the fact that visitors can ride the train or boat regardless of whether they pick pumpkins is additional support of Defendant's conclusion that the train and boat are not used in "harvesting" pumpkins.
Defendant provided pages printed from Plaintiff's website, including fee schedules for weddings, for the pumpkin patch, for the corn maze, and for school field trips. (Def's Ex B.) Ellinwood testified concerning an article provided to Defendant by Plaintiff that describes the entertainment aspects of the farm. (Def's Ex E.) She testified that she considered the article harmful to Plaintiff's position.
Ellinwood testified that Defendant did not receive personal property returns from Plaintiff prior to 2009. She testified that Defendant's auditor, who is charged with finding "missing" businesses, discovered Plaintiff and issued an omitted property notice. She stated that the 2009-10 tax year was included as omitted property because the notice was issued after the rolls were certified. She explained that penalties are statutorily imposed when personal property returns are not timely filed.
Cropp testified that he provided to Defendant a depreciation schedule prepared by Plaintiff's accountant listing Plaintiff's assets. (See Ptf's Ex 9 at 10.) He testified that Defendant *Page 6 
added nine new items[3] including values for the original cost and real market value for each of those nine items. (Id.) Cropp testified concerning several of the items added by Defendant, including the traffic safety equipment, the Halloween décor, and the retail shelving. Cropp testified that he does not agree with the real market values assigned to those items by Defendant.
Henkelman testified that he has been an appraiser with Defendant for nearly 20 years and has seen many asset lists in his experience. He is currently in the commercial unit, but was previously the supervisor for the personal property division and for the audit division. Henkelman testified that he determined the value of items of personal property not included on the depreciation schedule provided by Plaintiff based on his appraisal experience.
Plaintiff requests that the court find the five items of personal property that remain at issue in this appeal to be exempt under ORS 307.394. During trial, Plaintiff raised an issue of the values assigned by Defendant to the personal property at issue here. Finally, Plaintiff states that "it is inappropriate for the County to assess back taxes and a penalty" and requests relief from taxation in previous years and the penalty. (Ptf's Trial Br at 6.)
 II. ANALYSIS
The primary issue is whether the five items of personal property, about which the parties were not able to reach an agreement, are exempt from taxation under ORS 307.394, [4] which allows a property tax exemption for certain personal property. ORS 307.394 states, in pertinent part:
 "(1) The following tangible personal property is exempt from ad valorem property taxation: *Page 7 
 "(a) Farm machinery and equipment used primarily in the preparation of land, planting, raising, cultivating, irrigating, harvesting or placing in storage of farm crops;
 "* * * * *
 "(c) Farm machinery and equipment used primarily in any other agricultural or horticultural use or animal husbandry or any combination of these activities."
 "(2)(a) Items of tangible personal property, including but not limited to tools, machinery and equipment that are used predominantly in the construction, reconstruction, maintenance, repair, support or operation of farm machinery, and equipment and other real or personal farm improvements that are used primarily in animal husbandry, agricultural or horticultural activities, or any combination of these activities, are exempt from ad valorem property taxation."
A. Contentions of the parties
Plaintiff contends that the personal property at issue is "used on a farm to support an agricultural operation [and thus] qualifies for a personal property exemption under ORS 307.394." (Ptf's Trial Br at 4.) In support of that position, Plaintiff argues that the property at issue is harvesting equipment entitled to exemption under ORS 307.394(1)(a). "The statute states that the harvesting of the farm crop is part of the operation of a farm. The equipment used in such harvesting qualifies for the exemption. Here, all of the equipment at issue is used for harvesting * * *." (Id.) Plaintiff claims that the property at issue is used for harvesting because the public "is the `farm labor,'" and the boat, train, and wheelbarrows facilitate the harvest by transporting both the public and the pumpkins to and from the pumpkin patch. (Id. at 5.)
Plaintiff also contends that the property at issue is properly exempted under ORS 307.394(2)(a), as property that was "primarily used in support of the pumpkin patch operation, an agricultural activity." (Id.) Plaintiff asserts that "[t]he primary purpose of the train, boats, *Page 8 
and wheelbarrows is to facilitate the harvest and transport of pumpkins. They * * * would not exist but for this agricultural function." (Id. at 6.)
Defendant counters that the property at issue is not exempt, because "* * * though they may be machinery or equipment on a farm, * * * they are not used primarily in farming." (Def's Trial Mem at 2.) Defendant asserts that the property at issue is used for commercial purposes, rather than for farming and is not, therefore, entitled to exemption. (See Id.)
B. History of the farm personal property exemption and caselaw
The statute at issue here, ORS 307.394, was enacted in 2001 and was not amended between 2001 and 2007. Or Laws 2001, ch 753, § 15. Prior to 2001, the identical language at issue in ORS 307.394(1)(a), (c), and (2)(a) was included in ORS 307.400 (1999). See Or Laws 2001, ch 753, §§ 12, 15. The predecessor to ORS 307.400 was former ORS 310.608 (1981), which was renumbered to ORS 307.400 in 1983. Or Laws 1983, ch 600, § 2. Former ORS 310.608 (1981) was enacted in 1969. Or Laws 1969, ch 612, §§ 1, 2. Former
ORS 310.608 (1969) created an exemption for a percentage of inventory and a schedule of percentage increases in future years. Or Laws 1969, ch 612, §§ 1, 2. The language extending the definition of "inventory" to include "farm machinery used in planting, cultivating, or harvesting farm crops" was added in 1973. Or Laws 1973, ch 670, §§ 1, 2.
The exemption for personal property has expanded since 1969 through several legislative changes. For instance, in 1978, the tax court determined that personal property associated with an oyster farming operation was not entitled to exemption under ORS 310.608. Oregon Oyster Co v. Dept. of Rev.
(Oregon Oyster), 7 OTR 308 (1978). The court construed the term "farm," concluding that "the legislature used the terms `farm machinery,' `farm crops' and `all livestock' in ORS 310.608(3) with the intention that they refer to the traditional concept of a `farm' and the *Page 9 
equipment used to produce a crop on such a farm, and that this common concept excludes oyster farming (and, probably, other forms of aquaculture)."Id. at 311, 312. The court observed that past cases determined that a "farm" involved "land" that was dedicated to "agriculture," also noting that previous decisions held that a timber operation is not an agricultural operation and that nursery stock grown in greenhouses is not agriculture.Id. at 312-313 (citations omitted).
Subsequent to the decision in Oregon Oyster, the legislature in 1987 "specifically ma[de] `[o]yster racks, trays, stakes and other in-water structures used to raise bi-valve mollusks' exempt."Anadromous, Inc. v. Dept. of Rev. (Anadromous),11 OTR 272, 276-77 (1989) (citations omitted). Additionally, the court noted that "[i]n 1985, the legislature amended ORS 215.203(2)(a) to include within the definition of farm use the following: `* * * the propagation, cultivation, maintenance and harvesting of aquatic species.'" Id. at 277. Noting that "the legislature has responded to modern technology and changed the traditional concept of farming to include aquaculture," the court determined that certain personal property of a salmon hatchery and ranching operation qualified for exemption under ORS 307.400.Id. at 277-278.
In the absence of legislative amendments, this court and the Oregon Supreme Court have declined to allow an exemption for activities not traditionally included in the definitions of "farm" or "agriculture" or explicitly stated in the applicable statute. InBelozer Farms v. Dept. of Rev. (Belozer), this court determined that machinery and equipment used in a chicken processing plant was not "`farm] machinery and equipment."10 OTR 194, 197 (1986). The court considered prior case law construing related statutes: "[I]n Sokol BlosserWinery v. Dept. of Rev., 8 OTR 196 (1979), the court held that land used for a winery was not farm use. In that case the court reasoned that the legislative intent was to protect natural products, i.e., grapes, and not new products realized as a result of processing, i.e., wine." Belozer,10 OTR at 197-198. The *Page 10 
court in Belozer concluded that "[i]n examining ORS 307.400, the legislature appears to have consciously stopped short of processing." Id. at 198.
In King Estate Winery, Inc. v. Dept. of Rev.
(King Estate), the Oregon Supreme Court determined that certain winery property used to process and sell wine was not entitled to personal property exemption under ORS 307.400.329 Or 415, 418-19, 988 P2d 369 (1999). The Court considered the meaning of "farm," looking to
 "the described uses of `farm machinery and equipment' allowed under ORS 307.400(3). Farm machinery and equipment is exempt * * * if it is used primarily in the natural progression of crop cultivation: `the preparation of land, planting, raising, cultivating, irrigating, harvesting or placing in storage of farm crops. * * *.' That list of uses does not include the processing of farm crops; neither does it include the sale of farm crops or the sale of processed farm crops."
Id. at 419-20 (emphasis in original). The Court stated: "If the legislature had intended to exempt machinery and equipment used to make and sell wine, * * * then it could have included a reference to the processing and selling of crops in ORS 307.400(3)(a)."Id. at 420. The Court also considered whether the operation of a winery fell within the meaning of "any other agricultural or horticultural use" in subsection (c) and concluded that it did not, noting that "the limited and specific uses allowed in ORS 397.400(3)(a) and (b) * * * indicate legislative intent not to allow an exemption for the processing of crops, or for the sale of processed crops[.]" Id. at 423.
In Zerba v. Umatilla County Assessor (Zerba), TC-MD No 021348E, WL 22384916 (Oct 7, 2003), this court considered whether property "includ[ing] such items as light fixtures, telephones, fax machines, cash registers, ladders, red wagons for customers to carry their products, a walk-in cooler, pallets, a wood stove, ladders, scales, first aid kits, a rototiller, a tractor, and eight greenhouses" qualified for exemption under ORS 307.394.Id. at *1. In Zerba, the land used for the farm operation was in the exclusive farm use (EFU) zone and the land used *Page 11 
for a retail store open spring through fall was in the commercial zone. Id. at *1. The court declined to allow an exemption for the property used in the retail operation, explaining:
 "The statute envisions exempting that equipment used primarily in the field. * * *.
 "* * * * *
 "Although [taxpayers] may view their activities as one operation, the legislature only intended to exempt that property used primarily for farming and not equipment used for commercial purposes. * * * Commercial operations, such as grocery stores and retail nurseries, are not exempt from taxes and a farmer cannot change that fact by owning the store."
Id. at *1-2. The court ultimately concluded that the tractor, "used both for the farming and retail operation," was used "primarily" in the field and allowed the exemption.Id. at *3.
Defendant argues that this case is very comparable toZerba in that both involve two operations, a farm and a commercial operation focused on retail and entertainment. Plaintiff argues that this case is distinguishable from Zerba for two reasons. First, in Zerba, the farm and the commercial operation were distinct, the farm operation was on land zoned EFU whereas the commercial operations was zoned commercial. Second, the red wagons in Zerba were used like shopping carts whereas here the wheelbarrows are used to harvest rather than sell pumpkins.
Plaintiff has established that some portion of its operation involves farming and agriculture as contemplated by ORS 307.394; Cropp testified that Plaintiff grows grass seed, clovers, and pumpkins. However, an aspect of Plaintiff's operation is commercial: Plaintiff operates a retail store, rents the farm for picnics and weddings, and offers numerous activities to farm visitors, including the corn maze. ORS 307.394 allows an exemption only for particular uses of property: subsection (1)(a) allows exemption for "farm machinery and equipment used primarily in * * * harvesting * * * of farm crops"; subsection (1)(c) allows exemption for "[f]arm machinery and equipment used primarily in any other agricultural or horticultural use"; *Page 12 
and subsection (2)(a) allows exemption for "equipment and other real or personal farm improvements that are used primarily in * * * agricultural * * * activities." Thus, the court's focus is on the use of the property at issue, employing principles of statutory interpretation.
C. Statutory construction and burden of proof
To interpret a statute, the court's goal is to discern the legislative intent. PGE v. Bureau of Labor and Industries(PGE), 317 Or 606, 610, 859 P2d 1143 (1993); ORS 174.020. The court must examine the text and context of the statute, consider legislative history, and, if necessary, look to general maxims of statutory construction. PGE, 317 at 611; State v. Gaines(Gaines), 346 Or 160, 164-65, 172, 206 P3d 1042 (2009). The court must proceed "from what the legislature has written, to what the legislature has considered, and finally, as a last resort, to what the court determines makes sense * * *." Young v. State161 Or App 32, 37, 983 P2d 1044 (1999).
When analyzing an exemption statute, the court is guided by the principle that taxation is the rule and exemption from taxation is the exception. Dove Lewis Mem. Emer. Vet. Clinic v. Dept. ofRev., 301 Or 423, 426-27, 723 P2d 320 (1986). Property tax exemption statutes are strictly but reasonably construed. SWOregon Pub. Def. Services v. Dept. of Rev.,312 Or 82, 88-89, 817 P2d 1292 (1991). "Strict but reasonable construction does not require the court to give the narrowest possible meaning to an exemption statute. Rather, it requires an exemption statute be construed reasonably, giving due consideration to the ordinary meaning of the words of the statute and the legislative intent." North Harbour Corp. v. Dept. of Rev.,16 OTR 91, 95 (2002). Plaintiff has the burden of proof and must establish its case by a preponderance of the evidence. ORS 305.427. A "[p]reponderance of the evidence means the greater weight of evidence, the more convincing evidence." Feves v. Dept. ofRev., 4 OTR 302, 312 (1971). *Page 13 
D. ORS 307.397(1)(a): Farm machinery and equipment usedprimarily in harvesting of farm crops
The text of the statute is the best evidence of the legislature's intent, thus the text is the starting point of the analysis.PGE, 317 Or at 610. In examining the text of the statute, any explicitly defined terms must be examined first. State v. Couch(Couch), 341 Or 610, 617, 147 P3d 322 (2006). The words of the statutory definition are to be given their "`plain, natural, and ordinary meaning.'" Id. at 618, citing PGE, 317 Or at 611. If a word is not defined by statute and is a word of common usage (as contrasted with a term of art) courts typically give that word "its plain, natural, and ordinary meaning." See State v.Murray, 343 Or 48, 52, 162 P3d 255 (2007) (referring toWebster's Third New Int'l Dictionary to define the term "cause"); see also Potter v. Schlesser Co., Inc.,335 Or 209, 213, 63 P3d 1172 (2003) (referring to Webster's ThirdNew Int'l Dictionary to define the term "lien").
Plaintiff argues that the items of personal property at issue are used for "harvesting" pumpkins. The term "harvesting" and "agricultural use" are not defined in the statute. Webster's ThirdNew International Dictionary (Webster's) (unabridged ed 2002) provides the following relevant definitions of "harvest": "the act or process of gathering in a crop[;] to gather in (a crop)[;] to gather (a natural product) as if by harvesting."Webster's at 1036.
Plaintiff's claim that the trains, boats, and wheelbarrows[5]
are all used to "harvest" pumpkins is, in a sense, correct. Those items are all used in the "process of gathering in a crop," the pumpkins. The use of trains and boats to harvest pumpkins is certainly unique and is probably not necessary to the process of harvesting. However, ORS 307.394 does not include a *Page 14 
requirement that farm machinery and equipment used in harvesting be directly related or reasonably necessary to the harvesting process.[6]
Case law clearly establishes that machinery and equipment used in "the processing of farm crops; * * * the sale of farm crops [and] the sale of processed farm crops" are not entitled to exemption. King Estate, at 419-20 (emphasis in original). OAR 150-307.394(1)(b) defines "processing" as "altering the crop in any way such as: washing, icing, sorting, grading, waxing, boxing, slicing, or cutting." Ellinwood stated that she considers a "crop" to become a "product" when it is removed from the plant. The court can find no support for that view in the statute, case law, or administrative rule. ORS 307.394(1)(a) allows an exemption for "farm machinery and equipment used primarily in the * * * placing in storage of farm crops." In order to place crops in storage, they must have been removed from the plant; clearly, therefore, the statute considers a crop to continue to be a crop after the time that it is removed from the plant. The court finds that the pumpkins are still "crops" rather than "products" at the time that they are removed from the field and transported via wheelbarrow from the field.
It is not enough that farm machinery and equipment be used in "harvesting"; that use must be the "primary" use. "Primarily" is defined as "first of all: FUNDAMENTALLY, PRINCIPALLY."Webster's at 1800. The term "primarily" was added toformer ORS 310.608 in 1981 in SB 398 (1981). Or Laws 1981, ch 374, § 19. During the June 16, 1981, House Revenue Committee hearing on Senate Bill (SB) 398 (1981), committee members discussed addition of the term "primarily" to prevent exemption for personal property that is used only incidentally for farm use. Representative Bill Grannell (Grannell), Chairperson, stated: "If I use *Page 15 
a tractor to pull a stump, no problem. But there is a problem if it's one month on the farm and 11 months in construction." Tape Recording, House Revenue Committee, SB 298, June 16, 1981, Tape 298, Side A. Representative Barbara Roberts added: "`Primary' solves the problem of incidental use."Id. Gerry Bartz, Oregon Department of Justice, noted: "`Primarily' raises a factual question each time * * * whether an item is used for that or some other use." Id.
In Zerba, the court analyzed the use of a tractor, distinguishing between its use in the farm operation and its use in the retail operation. Cropp testified that visitors to the farm purchase a ticket to ride the boat or train for $4; that is the price paid regardless of whether the visitor picks a pumpkin. Merely riding the boat or train does not meet the definition of harvesting. Additionally, the trains and boats are used approximately seven times per year for events such as picnics and weddings held at the farm. Plaintiff has the burden of proof and has failed to establish by a preponderance of the evidence that the trains and boats are used "primarily" in harvesting. Cropp testified persuasively that the wheelbarrows are used exclusively to transport pumpkins from the field. The court finds that the wheelbarrows were used primarily to harvest crops and are entitled to exemption under ORS 307.394(1)(a).
E. ORS 307.397(1)(c) and (2)(a): Agricultural activities
ORS 307.394(1)(c) provides an exemption for "[f]arm machinery and equipment used primarily in any other agricultural or horticultural use or animal husbandry or any combination of these activities." ORS 307.394(2)(a) provides an exemption for "equipment and other real or personal farm improvements that are used primarily in * * * agricultural * * * activities[.]" Plaintiff contends that the pumpkin patch operation is an agricultural activity and that the trains, boats, and traffic safety equipment are all "used primarily" in that activity. Plaintiff considers *Page 16 
the pumpkin patch operation to constitute "agri-tourism" and presented evidence that the State of Oregon acknowledges and supports "agri-tourism."
The term "agriculture" is not defined in the statute, but has been construed in previous court decisions. In Bain v. Dept. ofRev. (Bain), the Oregon Supreme Court stated that "[o]ne common definition of `agriculture' is `the science or art of cultivating the soil, harvesting crops, and raising livestock'; it is also described in Webster's * * * as `the science or art of the production of plants and animals useful to man * * *.'"293 Or 163, 172, 646 P2d 12 (1982) (internal citations omitted). As discussed above, the courts have declined to extend the concept of "agriculture" beyond that traditional definition in the absence of clear legislative intent.
When considering the context of a statutory provision at issue, courts may consider provisions of the same statute and other related statutes. PGE, 317 Or 606, 611, 859 P2d 1143 (1993); see alsoState v. Stamper, 197 Or App 413, 417-18, 106 P3d 172 (2005). Relevant context may include other related provisions. Stull v.Hoke, 326 Or 72, 79-80, 948 P2d 722 (1997). Other provisions are given due weight depending on the strength of the relationship to the provision being construed. See, e.g., Gadda v. Gadda,341 Or 1, 10, 136 P3d 1099 (2006). Statutes that are related are relevant and should be construed together because they are "imbued by the same spirit and actuated by the same policy." Daly v.Horsefly Irrigation Dist.,143 Or 441, 445, 21 P2d 787 (1933) (internal quotation omitted).
Plaintiff argues that the allowable uses in the EFU zone set forth in ORS 215.283 support Plaintiff's position. ORS 215.283(1)(r) allows farm stands used for the sale of farm crops as well as "retail incidental items and fee-based activity to promote the sale of farm crops or *Page 17 
livestock" provided that the "annual sale of incidental items and fees from promotional activity do not make up more than 25 percent of the total annual sale of the farm stand."[7]
This court has previously relied on land use statutes to aid in the interpretation of property tax exemption statutes.See, e.g., Anadromous,11 OTR at 277 (finding ORS 215.203 involving "land use (zoning)" to be "in pari materia" with ORS 307.400, noting that "the court views them sufficiently close as to construe them together. The purpose of such construction is to produce a `general state of harmony' within the property tax laws dealing with farming.") However, the Oregon Supreme Court in King Estate declined to rely on land use laws found in ORS 215.203 as context for ORS 307.400, stating that:
 "Land use laws reflect different policies than tax laws. The special assessment statutes relating to farm land specifically refer to ORS 215.203(2)(a) as the source for the definition of `farm use.' ORS 307.400 * * * makes no specific reference to a definition of `farm machinery and equipment,' neither does that statute refer to the definition of `farm use' in ORS 215.203(2)(a). We concluded that ORS 215.203(2)(a) * * * [has] no application in determining whether taxpayer qualifies for a tax exemption under ORS 307.400(3)(c)."
Id. at 422. As stated above, the pertinent language of ORS 307.394 is identical to that previously *Page 18 
included in ORS 307.400 (1999), which was at issue in KingEstate. Following King Estate, the court finds that ORS 215.283(1)(r) has "no application" to the interpretation of ORS 307.394.
Legislative history provides some insight into the purpose behind ORS 307.294(2)(1). The language in ORS 307.394(2)(a) came into effect in 1981 via SB 398 amending former ORS 310.608 . During the June 16, 1981, House Revenue Committee hearing, Jim Scherzinger, Economist, described the amendment: "Previously, small things like hammers were not exempt; this bill has been drafted to make clear that those things are exempt[.]" Tape Recording, House Revenue Committee, SB 398, June 16, 1981, Tape 297, Side A. Grannell added: "Part (d)[8] includes things like a welding torch, chain saws, wire stretcher, hammer, post hole-digger[.]" Id. Jack Chapin, Oregon Farm Bureau, testified before the committee in support of the SB 398 (1981): "Farmers use lots of equipment that could be questionable equipment, but we use it for farming, to prepare the land for growing another crop." Id.
The concept of "agri-tourism" does not fit within "agriculture" as defined by the Oregon Supreme Court in Bain. The legislative history of ORS 310.608 (1981), the predecessor to ORS 307.394, indicates that the language of ORS 307.394(2)(a) was added to extend the reach of the existing exemption to tools and equipment supportive of agricultural activities, even if not directly used in agricultural activities. It does not suggest that the language in ORS 307.394(2)(a) was added for the purpose of expanding the definition of "agriculture" to new types of activities such as "agri-tourism." Exemptions are to be strictly construed. The court finds Plaintiff's use of the trains, boats, and traffic safety equipment does not constitute "agriculture" within the meaning of ORS 307.394; Plaintiff is not entitled to exemption for those items of property. *Page 19 
F. Valuation
Plaintiff raised an issue of the real market value of the items of personal property found to be taxable. Henkelman testified that values were assigned based on the federal depreciation schedule provided by Plaintiff for items listed on the schedule and based on his appraisal experience for items not listed on the schedule. Cropp testified concerning his opinion of value for several items of property, including the trains, boats, traffic safety equipment, retail shelving, and Halloween décor. The court received no evidence to suggest that Plaintiff's opinion of value was based on any of the methods of valuation required by statute. See, e.g., ORS 308.205 (defining the "[r]eal market value of all property, real and personal"); OAR 150-308.205-(A)(2) (identifying the three approaches of valuation). Plaintiff did not meet its burden of proof with respect to requested value reductions of the taxable personal property at issue.
G. Waiver of back taxes and penalty
Plaintiff requests waiver of the back taxes and penalty assessed through Defendant's omitted property assessment. As part of its omitted property assessment, Defendant imposed penalties totaling $2,907.22. (See Def's Ex J.) ORS 311.216(1) states, in pertinent part:
 "Whenever the assessor discovers or receives credible information * * * that any real or personal property * * * has from any cause been omitted, in whole or in part, from assessment and taxation on the current assessment and tax rolls or on any such rolls for any year or years not exceeding five years prior to the last certified roll, the assessor shall give notice as provided in ORS 311.219."
(Emphasis added.) Under ORS 311.216(1), assessment of omitted property for the current tax year and up to five years prior is mandatory, as indicated by use of the word "shall." The court is not aware of any authority supporting removal of the back taxes assessed in this case.
Appeal of a penalty to this court is provided in ORS 311.223(4), which states, in part: "If a penalty under ORS 308.295 or 308.296 is imposed for failing to timely file a real, combined *Page 20 
or personal property return with respect to the assessment under ORS 311.216 to 311.232, the imposition of the penalty may be appealed to the tax court." ORS 305.422 provides the standard by which this court reviews requests for penalty waivers: "[T]he court may waive the liability for all or a portion of the penalty upon a proper showing of good and sufficient cause."
This court has previously determined that the standard for "good and sufficient cause" stated in ORS 305.288(5) is applicable to ORS 305.422. Manna Sushi v. Multnomah County Assessor, TC-MD No 091356D, WL 224555 *1 (June 4, 2010). ORS 305.288(5)(b)(A) defines "[g]ood and sufficient cause" as "an extraordinary circumstance that is beyond the control of the taxpayer." "[I]nadvertence, oversight, lack of knowledge, [and] hardship" is specifically excluded. ORS 305.288(5)(b)(B). Ellinwood testified that Defendant had not received any personal property tax returns from Plaintiff prior to 2009. Having received no evidence concerning the reason that Plaintiff failed to file personal property tax returns prior to 2009, the court finds that Plaintiff has not shown "good and sufficient cause" for failure to file returns and the court cannot grant waiver of the penalties assessed by Defendant.
 III. CONCLUSION
After carefully considering the testimony, evidence, and arguments of the parties, the court finds that Plaintiff's wheelbarrows are entitled to exemption under ORS 307.394. The court finds that Plaintiff's sternwheelers, trains, train cars, and traffic safety equipment are not entitled to exemption under ORS 307.394. Plaintiff failed to meet the burden of proof with respect to a reduction the real market value of its taxable personal property. Plaintiff failed to show good and sufficient cause for waiver of penalties under ORS 305.422 and failed to provide legal authority for waiver of back taxes assessed under ORS 311.216. Now, therefore, *Page 21 
IT IS DECIDED that the following items of personal property are taxable: train shed, railroad track, rail tie spikes, camera/printer, popcorn machine, latte machine, boat/float, miscellaneous supplies, Halloween décor, Loch Ness monster, shark, retail shelving, ticket booth, cash boxes, lake electronics, trains, train cars, sternwheelers, and traffic safety equipment;
IT IS FURTHER DECIDED that the following items of property are exempt from taxation under ORS 307.394: computer 2001, computer 2003, sewing machine, safe, radios, fax, copy machine, security system, beach boat, and wheelbarrows;
IT IS FURTHER DECIDED that Plaintiff's request for a reduction in the real market value of property identified as Account P216887 is denied; and
IT IS FURTHER DECIDED that Plaintiff's request for waiver of back taxes and penalties is denied.
Dated this ___ day of October 2011.
If you want to appeal this Decision, file a Complaint in theRegular Division of the Oregon Tax Court, by mailing to:1163 State Street, Salem, OR 97301-2563; or by hand delivery to: Fourth Floor,1241 State Street, Salem, OR.
 Your Complaint must be submitted within 60 days after the dateof the Decision or this Decision becomes final and cannot bechanged.
 This document was signed by Magistrate Pro Tempore Allison R.Boomer on October 13, 2011. The Court filed and entered thisdocument on October 13, 2011.
[1] An issue was raised at trial whether the ticket booth is part of the real property (as agreed during mediation) or is personal property. The parties ultimately agreed that it should not be included as taxable personal property.
[2] Cropp testified that it would be a 2,000 foot walk to the pumpkin patch from the ticket booth.
[3] "Traffic safety equipment," "Halloween décor," "Lochness monster," "shark," "retail shelving," "ticket booth," cash box," "lake electronics," and "scarecrow cutout." (Ptf's Ex 9 at 10.)
[4] All references to the Oregon Revised Statutes (ORS) and the Oregon Administrative Rules (OAR) are to 2007. ORS 307.394 has remained unchanged since 2001 and the language in the 2007 version is identical to previous versions applicable in this case (2003 and 2005).
[5] The traffic safety equipment does not appear to play any part in the process of harvesting pumpkins.
[6] ORS 307.397(5) provides an exemption for "[e]quipment used for the fresh shell egg industry that is directly related andreasonably necessary to produce, prepare, package and ship fresh shell eggs from the place of origin to market[.]" (Emphasis added.) No similar requirement exists in ORS 307.394.
[7] ORS 215.283(1)(r) provides:
 "(1) The following uses may be established in any area zoned for exclusive farm use:
 "* * * * *
 "(r) Farm stands if:
 "(A) The structures are designed and used for the sale of farm crops of livestock grown on the farm operation, or gown on the farm operation and other farm operation in the local agricultural area, including the sale of retail incidental items and fee-based activity to promote the sale of farm crops or live-stock sold at the farm stand if the annual sale of incidental items and fees from promotional activity do not make up more than 25 percent of the total annual sales of the farm stand; and
 "(B) The farm stand does not include structures designed for occupancy as a residence or for activity other than the sale of farm crops or livestock and does not include structures for banquets, public gatherings or public entertainment."
[8] The language in subsection (d) of former ORS 310.608 is that included in ORS 307.394(2)(a).